**People of the State of Illinois, Plaintiff-Appellee, v. Leroy Yarbrough, Defendant-Appellant.**

Gen. No. 51,425.

First District, First Division.

June 24, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (George L. Lincoln and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Theodore A. Shapero, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial, defendant was found guilty of the offense of armed robbery and was sentenced to the penitentiary for a term of 3 to 8 years. On appeal defendant contends that (1) he was denied effective assistance of counsel, and (2) he was denied a hearing on the voluntariness of a confession.

Defendant's trial was on March 28, 1966. Almando Zizzo testified that shortly after midnight on Wednesday, November 3, 1965, while walking in the vicinity of Warren Boulevard and Kedzie Avenue, he was pulled into a gangway by a man. There was a lighted porch light nearby, and Zizzo was face to face with his assailant. He observed that his assailant had a scar on the left side of his face and was wearing a short leather jacket, dark trousers and a red plaid-like sweatshirt. The assailant held a sharp instrument at Zizzo's neck, punched him, took his watch, lighter, wallet, jacket and eighty cents, and ran toward an alley. Three minutes later, Zizzo noticed a squad car and told the police officers about the robbery and described his assailant. At about 1:30 a. m., Zizzo was called to the Fillmore police station. He identified defendant, Leroy Yarbrough, in a lineup of six men. He also identified a wallet, lighter and watch which had been taken from him by the assailant.

Police Officer John Duffy testified that he was working with his partner, Edward Nowdomski, on the morning of November 3, 1965. He saw defendant on the northeast corner of Sacramento and Madison between 12:30 and 1:00 a. m. Defendant fitted the description of a man wanted for a robbery which had occurred a few minutes earlier. The defendant was arrested and searched and a black leather wallet and cigarette lighter were found. At the Fillmore police station defendant was searched again, and a watch and knife were found. Later, the wallet, lighter and watch were identified by Zizzo as

his. Officer Duffy also testified that at the lineup defendant was identified by Zizzo as the robber, and at that time and in the presence of Officer Cuddy, the defendant said, "I did it, what are you going to do about it?"

The defendant testified and denied the robbery. He also denied that the police took from his person the exhibits identified by Zizzo. Defendant related in detail his whereabouts and activities on the evening of November 2. He had walked with his nephew, Darcy Childs, to Kedzie and Lake, where the nephew caught a bus at about 12:30. Defendant was wearing a short leather jacket, a red sweater and gray trousers. He was arrested on Kedzie between Lake and Fulton. He had been drinking all that day and evening, but he was positive as to where he was about midnight.

Darcy Childs and Letha Friensen testified for the defense as to where the defendant was between the hours of 11:00 and 1:00 on the evening in question.

In rebuttal, Officer Edward Nowdomski corroborated the testimony of Officer Duffy as to the arrest and the items found in defendant's possession. Officer Louis Cuddy testified that at the lineup, when defendant Yarbrough was confronted and pointed out by Zizzo, he said, "Yes, I did do it. So what? What do you want to do about it?" Officers Nowdomski and Cuddy both testified that defendant was not beaten. Officer Nowdomski testified that defendant had been drinking and was not coherent.

Considered first is defendant's contention that he was denied effective assistance of counsel. Defendant was arraigned on November 24, 1965. On that date the Public Defender was appointed to represent him and a plea of not guilty was entered.

On December 22, 1965, defendant filed a motion to suppress "a knife." This motion was heard on January 7, 1966, and after a hearing it was denied. Three police officers testified. Officer Duffy, an arresting officer,

460

testified that defendant was arrested at the northeast corner of Sacramento and Madison at about 12:45 a. m., November 3, 1965. Defendant was wearing "a three-quarter length black leather jacket, a red T-shirt, polo shirt, and brown pants." He had a scar on his cheek and a mustache and fitted the description of a wanted robbery suspect. Defendant was searched, and the officer found in defendant's possession "a black leather wallet" and "a brown leather wallet" and "a knife."

The record shows that during the hearing of the motion the State's Attorney turned over to counsel for defendant Officer Duffy's report of the arrest, a copy of the testimony before the Grand Jury, a copy of a police report entitled "Case Report," bearing Officer Smith's name, and a document labeled "Supplementary Report," also bearing Officer Smith's name.

The Public Defender continued to represent defendant up to the day of his trial. When the case was called for trial on March 28, 1966, Bernard Koenig, an attorney, stated to the court that he had been retained by the family to represent defendant. He was given leave to file his appearance, and leave was given to the Public Defender to withdraw on behalf of the defendant. Mr. Koenig stated they were ready for trial. After some discussion with defendant, he informed the court that defendant wanted to waive a jury and have his matter tried by the court. The court then proceeded to inform defendant that he had a right to a jury trial if he desired, and a jury waiver was signed by defendant. Mr. Koenig remarked that he had examined the file and saw no disposition of the motion to suppress, and the Assistant State's Attorney stated that the record showed the motion was heard and denied on January 7. The trial was then recessed until 1:00 o'clock. Defendant was given leave to make a statement to the court. He stated Mr. Koenig was hired by his girl friend and sister, and he wanted "a Bar Association lawyer." A discussion then

461

ensued, participated in by the court, Mr. Koenig and defendant. Defendant was informed that he was the one to make the decisions as to his choice of counsel and to waive his right to a trial by jury. Defendant finally stated he had "laid here in jail four months," and he was satisfied to proceed with Mr. Koenig as his counsel, and he was ready for a trial by the court.

Defendant asserts that he was denied effective assistance of counsel because Mr. Koenig utterly failed to acquaint himself with the case and proceeded to trial totally unprepared. To demonstrate that Mr. Koenig was unprepared and unfamiliar with the law, defendant urges the following: (1) Koenig did not know that the motion to suppress had been denied. (2) He made no request for the Grand Jury minutes during the trial. (3) Officer Duffy's testimony at the trial bore little resemblance to his evidence at the hearing of the motion to suppress, and Koenig was unaware of a number of contradictory statements which could have impeached the officer's testimony, and Duffy's " 'identification' would have deserved little credence if defense counsel had brought out the glaring inconsistencies." (4) Koenig permitted testimony by the State of an oral confession, without objection, and which should have been excluded because the State failed to furnish a list of witnesses. Defendant, to further show the inept way in which Koenig handled the confession issue, notes the following from the record: "[Defendant] A. No, they beat me trying to make me sign a confession. Mr. Nellis: Object and move to strike. The Court: Sustained. Mr. Nellis: I withdraw the objection, Judge. Mr. Koenig: I object as not being responsive."

 Although the record shows that defendant finally consented to proceed to trial with Mr. Koenig as counsel of his own choice, it is quite obvious that defendant was reluctant to do so. Therefore, we have decided that his contention that he was denied effective

assistance of counsel should be determined with the application of the principles used when court-appointed counsel has been charged with such incompetence as to deny a defendant due process of law. To warrant a reversal because of the incompetence of court-appointed counsel, it must clearly appear not only that the counsel performed his trial duties in an incompetent manner, but also that defendant was prejudiced thereby. (People v. Bernatowicz, 35 Ill2d 192, 196, 220 NE2d 745 (1966).) Unless defendant is prejudiced and thereby deprived of a fair trial, a new trial does not necessarily follow from the attorney's incompetence or his neglect. A defendant is entitled to a fair trial, but not a perfect one. People v. Morris, 3 Ill2d 437, 447, 448, 121 NE2d 810 (1954).

■ We have examined the record carefully in the light of defendant's charges. Some of these charges are dehors the record, and others go to matters pertaining to the exercise of judgment and discretion, and "it is well settled that review of appointed counsel's competence does not extend to those areas involving the exercise of judgment, discretion or trial tactics . . . and this is true even though appellate counsel or the reviewing court might have acted in a different manner." People v. Wesley, 30 Ill2d 131, 136, 195 NE2d 708 (1964).

Although the record indicates that Koenig was unaware that the motion to suppress had been disposed of and adversely to defendant, we find no prejudice to defendant here. The trial record does not mention Grand Jury minutes, and there is nothing from which it can be inferred that Koenig did not examine the Grand Jury minutes which had, on December 1, been included in a subpoena duces tecum directed to the State's Attorney. Officer Duffy's trial testimony and his testimony at the motion to suppress showed a number of inconsistencies regarding defendant's arrest and as to when he found the knife on defendant. However, the items identified by Zizzo as belonging to him were found on

463

the defendant immediately after the arrest, and the possible impeachment of Duffy in this area would not have disturbed or lessened the value of Zizzo's identification. At the time of the robbery, Zizzo had ample opportunity to observe his assailant, and defendant fitted the description given to the police by Zizzo. Defendant was arrested shortly after the robbery and then positively identified by Zizzo at the police station, all of which occurred within the space of several hours.

■ Defendant has not shown that his counsel was incompetent or failed to adequately conduct his defense. Koenig questioned extensively two witnesses who supported the defendant's alibi. He cross-examined at length the State's principal witnesses, and his closing argument indicates an understanding of the case and competence. We do not believe that it can be said that defendant's trial was a farce and "a mockery of justice." Defendant's guilt was clear and convincing, and the trial court could not have reasonably found him not guilty.

We consider next defendant's contention that he was denied a hearing on the voluntariness of his confession, which consisted of the testimony of two police officers that when he was identified by Zizzo, he said, "I did it, what are you going to do about it?" Defendant argues that he had a right to a hearing on the voluntariness of the confession even though he denied making it, and the failure of his counsel to make an objection did not waive defendant's right to a hearing to determine whether the confession was voluntary.

■ The statement made by defendant during his direct examination at his trial was, "No, they beat me trying to make me sign a confession." This record contains a transcript of the testimony of the hearing of defendant's motion to suppress, at which time defendant was represented by the Public Defender. We think it a fair inference that if defendant had been beaten by the police for any reason at all, it would have been

464

developed at that hearing. Although the record shows no hearing as to whether defendant's alleged confession was voluntary, if error was committed in this area, we hold that it was harmless error because of the positive identification of defendant by Zizzo.

 This was a bench trial and the evidence was not complex. The purpose of review in a criminal case is not to determine whether the record is perfect, but rather to determine whether the defendant has had a fair trial under the law, and whether his conviction is based upon evidence establishing his guilt beyond all reasonable doubt. People v. Ward, 32 Ill2d 253, 259, 204 NE2d 741 (1965).

We think this record meets that test and defendant had a fair trial, free from prejudicial error, and his conviction should be affirmed.

The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.