THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES KLUPPELBERG, Defendant-Appellant.

First District (2nd Division)   No. 1—90—1114

Opinion filed December 28, 1993.

518

Rita A. Fry, Public Defender, of Chicago (Mary C. Arundel, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

After a bench trial, defendant James Kluppelberg was found guilty of murder and arson and was sentenced to natural life in prison for murder with concurrent terms of 14 years for three counts of arson. He now appeals, raising numerous issues. We affirm.

On March 24, 1984, in the early morning hours, a fire broke out in the vacant first floor of 4448 South Hermitage, a three-flat apartment building. The second-floor apartment was occupied by the Lupercio family, Santos and Elva and their five children under age 10. Mrs. Lupercio and the five children burned to death, and Mr. Lupercio suffered a fractured skull and severe burns. The building to the north at 4446 South Hermitage was damaged, and the building to the south at 4450 South Hermitage was destroyed, but no injuries were reported in these buildings.

On December 24, 1987, Detectives John Schmitz and Leonard Rolston of the Chicago police department bomb and arson squad were assigned to investigate two car fires which had occurred at 820 West Belle Plaine in Chicago. The fires had been reported by defendant, who worked at that location as a security guard. On January 12, 1988, defendant was brought to the bomb and arson office at 1121 South State Street to be interviewed about those fires, and to look at photos of arson suspects to see if he recognized any individual as the person he claimed to have seen running from the scene. During the course of the interview, defendant admitted to setting fire to the cars himself. He also admitted to having started several other fires. Further, defendant admitted to starting the fatal fire at 4448 South Hermitage. Assistant State's Attorney Larry Axelrood was called, and defendant gave a brief oral statement to him admitting setting that fire. On January 27, 1988, defendant was indicted for the six killings and the arson that caused them.

On November 9, 1988, the circuit court held a hearing on defendant's motion to suppress his statement. In addition to the above facts, testimony adduced at the hearing indicated that when defendant was admitted to the Cook County jail on January 14, 1988, he had several bruises in his kidney area. This along with other evidence offered by defendant that he had been beaten by the police led the court to conclude that defendant's statement had been involuntarily given. The circuit court suppressed defendant's statement.

Defendant then filed a motion *in limine* to exclude from evidence the testimony of Dawn Gramont, Michelle Briton, and Dwayne Glassco. The reasoning behind the motion was that but for the illegally obtained confession, the police would not have known of these witnesses, and they would not have been questioned and presented to the grand jury. The court ruled that Dawn Gramont and Dwayne Glassco had been previously known to the police, and denied defendant's motion as to them, but granted it as to Michelle Briton.

At trial, Santo Lupercio and Oscar Siller testified as to the events of the fires summarized above. Captain Francis Burns of the Chicago fire department testified that he was commander of the office of fire investigation of the Chicago fire department. This unit was charged with determining the cause and origin of fires, but was not operational until April 1, 1984, approximately one week after the fire at 4448 South Hermitage. The unit was in training, however, and after the fire was extinguished Burns took the trainees to the scene to investigate the fire. After being qualified as an expert, Burns testified that upon entering the remains of the building he noticed large, shiny "alligatoring," which indicated a fast-spreading fire rather

than one which had smoldered. He found that the majority of the fire had been confined to the back of the structure. Burn patterns indicated that, contrary to a fire's natural tendency to burn upwards, this fire had also burned down through the floor boards into the crawl space. He also testified that the fire had begun on the first floor, but a search through the wreckage showed that there had been nothing in the apartment at the time of the fire that might have caused it. He also stated that the apartment had been vacant and that the gas and electricity had been shut off, eliminating them as possible causes of the fire. Burns testified that, because of the burn patterns he found, in his opinion an accelerant had been used. Combustible materials, such as newspapers or rags, must have been brought in to provide fuel for the fire in an otherwise empty apartment. The fire had originated six to ten feet inside the rear section of the first floor apartment. In Burns' opinion, the cause of the fire was arson. On cross-examination, Burns stated that he did not know of any test that had been done to find traces of an accelerant, but some accelerants leave no residue. He also stated that because his unit was still in training and not yet operational, he made no report as to his findings or conclusions. He was able to remember the details because this was a major fire with six fatalities.

Dawn Gramont testified that at the time of trial she was 24 years old and she had four children, one by defendant and three by Dwayne Glassco. On March 24, 1984, she was living at 1748 West 45th Street, which was around the corner from 4448 South Hermitage. She was living with defendant at the time in a small cottage, consisting of a front room, two bedrooms, a kitchen, a bathroom, and an attic. At the time Glassco and Michelle Briton, Glassco's fiancee, were temporarily staying in the attic. On March 23, 1984, Gramont arose at about 1 p.m. She spent the day drinking, cleaning the house, and taking the children to the park. Some time during the course of the day, defendant left the cottage and went to his wife's house. He returned home at about 7 or 8 p.m. Gramont and defendant got into an argument about his having been at his wife's house, and they argued about it off and on all night. Defendant left the house and "turned off" the streetlight just outside and next to the building where the alley meets the street. This was not uncommon, because it interfered with their television reception. Defendant returned and made dinner for the children. Then defendant left the house again and was gone 5 or 10 minutes. This was about an hour and a half before the fire. When he returned, defendant and Gramont had sex, and then played cards with Glassco and Briton. While they were playing cards they noticed the fire through the kitchen window. They

continued to play cards until a firefighter or a police officer came and told them to evacuate. Glassco and defendant went to the building in front of their own to help evacuate their landlord, an old man. They then watched the fire. Gramont saw defendant hand out cards for a board-up service he worked for. By this time it was daybreak, and they went home and went to bed.

At this point in her testimony Gramont was asked if she had given sworn testimony before the grand jury in this case. She admitted that in her grand jury testimony she stated that defendant had left the cottage four times during the night of the fire and that she had followed him out of the house. She had stated that she saw defendant climb a lamp post behind the building at 4448 South Hermitage and cut the power to the streetlight. The second time he left, defendant went to that pole again. The third time he left, defendant went to the rear of the building at 4448 South Hermitage and looked through the back door into the first-floor apartment. When he left the fourth time, she did not follow him. He returned about 15 minutes later and said there was going to be a fire over near the light pole where he had been earlier. About 10 minutes later they heard fire engines. Gramont also admitted that she had told the grand jury that defendant admitted starting the fire.

During a conference with the court, the prosecutor told the court that the verbatim transcript of Gramont's grand jury testimony was unavailable because the court reporter's notes had been destroyed in a house fire. The People were using the notes of the assistant State's Attorney who had presented Gramont to the grand jury. While there was no verbatim transcript available, the State sought to have her answers regarding defendant's actions and admissions on the night of the fire admitted as substantive evidence under section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1 (now codified at 725 ILCS 5/115—10.1 (West 1992))).

During cross-examination, Gramont admitted to having given the above summarized testimony, but stated that she had been coerced into doing so by a police officer who had struck her and who had threatened her life and the lives of her children. She had lied to the grand jury and had filed a complaint with the Office of Professional Standards and had testified before it, although she could not remember the name of the officer who coerced her. Finally, Gramont testified on cross-examination that the building at 4448 South Hermitage was not visible from the window of the attic of the cottage.

Dr. Eupil Choi of the Cook County medical examiner's office testified that he performed autopsies on the six victims. Mrs. Lupercio died of carbon monoxide intoxication and thermal burns. The five

children died of burns. The manner of death was homicide. The original report listed the cause of the deaths as an accident, but that was changed to homicide on February 4, 1988, based on information received from Detective Foley of Area Three and an assistant State's Attorney.

Dwayne Glassco testified that he had been convicted of burglary three times and theft once. At the time of trial he had pending a petition for violation of probation. In exchange for his testimony, the State's Attorney's office had agreed to recommend a sentence of three years time considered served.

On March 23, 1984, Glassco had known defendant for about one year. Defendant had been going out with Gramont, the mother of Glassco's three children. On that date, Glassco was staying in the attic of the cottage at 1748 West 45th Street rented by Gramont and defendant. During the late evening hours, Glassco was upstairs with Michelle Briton and three other friends, using cocaine and drinking beer. During the entire night, they used approximately a quarter of a gram of cocaine and drank about a case and a half of beer. Glassco was able to talk coherently, walk, stay awake, and remain aware of his surroundings. Gramont and defendant had been arguing about Gramont drinking and using cocaine, and defendant left the cottage at about 10 or 10:30 p.m., going out the front door to the street.

There were two windows in the attic, one in the front and one in the back. The one in back was about eight inches square. From that window Glassco saw defendant go out to the streetlight in front of the cottage and pull the wires, turning the streetlight off. Defendant left the house again at about 11 or 11:30 p.m. Glassco was in the attic and heard defendant yelling at Gramont and slam the door as he left. From the back window, Glassco saw defendant go into the alley a few houses away. Glassco was pacing back and forth because of the effects of the cocaine, and when he returned to the window he saw defendant in the yard behind the building at 4448 South Hermitage. He could see the entire yard of the building as well as its back door; nothing obstructed his vision. He saw defendant standing in the yard and then walking back and forth through the gangway. Defendant then returned to the cottage. When Glassco asked defendant what was wrong, defendant smiled and went into his bedroom.

Defendant went out again some time later. Glassco went downstairs to get some beer and remained there for 25 or 30 minutes. When he went back upstairs he noticed that he could not see as well as he had before; there was no longer as much light coming through the back window. Defendant was in the yard behind 4448 South Hermitage again, and he walked toward the front of the building.

Then defendant came back, went to the rear of the building, and opened the screen door. He waited a while, and then entered. Defendant remained inside for 5 or 10 minutes, and then left and walked back to the alley. He then returned to the building, carrying a bundle of newspapers in his arms. After three or four minutes, defendant came out of the building without the newspapers and returned to the cottage. Glassco asked defendant if he was "ripping the place off," but defendant again ignored him and went into his bedroom.

At about 3:45 or 4 a.m., Glassco saw defendant leave the cottage a fourth time. At about this time Glassco realized that the utility light that had been shining through the attic window was out, and when he went to the window to verify this, he saw defendant walking back and forth through the gangway at 4448 South Hermitage. Defendant went back to the alley and grabbed a bag near the garbage cans and then reentered the building. Five or six minutes later defendant came out again and ran back to the alley and across a yard to 44th and Wood. He then came back to the cottage. Again Glassco asked defendant what he was up to, and again defendant said nothing and went into his bedroom. Ten minutes later Glassco and the others upstairs began to smell smoke. Then they heard fire trucks and saw that the building at 4448 South Hermitage was burning.

Later that morning Glassco and defendant were in the attic watching the fire. Glassco asked defendant why he had started the fire, and defendant told him to shut his mouth, "or else." Defendant told him, "You know how I am when I feel like I'm losing someone, I do stupid things."

The parties stipulated that the owners did not consent to the damage or destruction of the buildings by fire, and the State rested. Defendant's motion for a finding of not guilty at the end of the State's case was denied, and defendant rested without presenting testimony. Defendant was found guilty of six counts of murder and three counts of arson, but was acquitted of attempted murder. The State requested a death penalty hearing.

On November 15, 1989, defendant informed the court of his intent to discharge his trial counsel and asked the court to appoint the public defender. Defendant also filed a complaint against his attorney with the Attorney Registration and Disciplinary Commission.

On December 11, 1989, a hearing was held before another judge on defendant's motion for a substitution of judges for cause. Defendant conducted the hearing *pro se*, and his trial counsel was present to assist the public defender, who was appointed as defendant's standby counsel.

Defendant's wife, Bonnie Kluppelberg, and his mother, Delores

Kluppelberg, testified at the hearing to substantially the same facts. Bonnie stated that she heard the trial judge on the first day of the two-day trial say that she considered the case over because she was going on vacation the next day. Later, the judge told defendant she was tired of his "antics," in a manner both witnesses described as being very upset. Apparently, these "antics" included defendant's escape from the county jail and his motion for substitution of attorneys. Both also testified that defendant was involved in the bribery investigation of the sheriff's deputy assigned to the trial judge's courtroom, and that the deputy and the judge appeared to be very good friends, causing prejudice to defendant. Delores testified that the facts that defense counsel did not present witnesses and that there was no closing argument showed that the trial judge was prejudiced against defendant. The motion for substitution of judges was denied.

A hearing on defendant's post-trial motions was held on March 15, 1990. Defendant, then represented by the public defender, called witnesses concerning two paragraphs of his supplemental motion. Charles Petrosus testified that he was 80 years old, and that on the night of the fire he had been living at 4446 South Hermitage, which was next to the house that was burned. He had lived in the rear apartment at that address since he was six or seven years old. The house was 85 feet long and two stories high. The house at 4448 was 48 feet long and three stories high, and the building at 4450 was the same size as the building at 4446—85 feet long and two stories high. When he was much younger, Petrosus had had an uncle who had lived in the building at 1748 West 45th Street. He had been in the attic of that building many times prior to his uncle's death in 1941, and the building at 4448 was not visible from the attic window because the building at 4450, the longer of the two, blocked the view. In the period since 1941, the structures of the buildings had not been changed in any way.

Thomas Brosnan, an assistant public defender, testified that he and two other members of the public defender's office went to the scene of the fire after the appointment of the public defender. At 4448 and 4450 there were only two empty lots, but he was able to find lines of cement in the ground which he believed to be the remains of the foundations of the two buildings. They took photographs of the scene, including some from the window in the attic of 1748 West 45th Street. These photographs, defendant's exhibits 5, 9, 10, and 11, were received into evidence by the court.

Ronald Cerevic testified that he lived in the building at 1748 West 45th Street for about four or five years in the early sixties.

From the second-floor window, one could see the buildings at 4446 and 4450 South Hermitage, but not the building at 4448, which was blocked by 4450.

Dawn Gramont testified that at the time of the fire the window in the attic of the cottage had been boarded up. She told defendant's trial counsel of this, but he failed to ask her about this fact during her trial testimony.

At the close of testimony there was extensive argument. The circuit court ruled that defendant had not proved that his trial counsel was incompetent, and the additional evidence did not cause it to revise its opinion of Glassco's credibility. Accordingly, it denied defendant's motion.

Defendant subsequently waived a jury during the death sentencing hearing. He was found eligible for the death penalty, but the court found sufficient mitigating factors to preclude its imposition. Defendant was sentenced to life imprisonment for murder, concurrent with three 14-year extended terms for arson.

I

On appeal, defendant first contends that he is entitled to a new trial because evidence was presented at the post-trial motion hearing that cast doubt upon Dwayne Glassco's veracity. Glassco had testified that, while looking out the attic window of the cottage, he saw defendant entering and leaving the back door of the building at 4448 South Hermitage. Defendant argues that the testimony of Charles Petrosus, Thomas Brosnan, Ronald Cerevic, and Dawn Gramont established that the back door of the building at 4448 could not be seen from the attic window of the cottage, and that the evidence therefore indicates that Glassco could not have seen what he testified he saw. Defendant therefore maintains that this court must "look at and review the exhibits discussed" in the hearing on the motion for a new trial and again in defendant's brief.

■ Defendant's entire argument on this point is simply a recapitulation of the evidence presented at the hearing on the motion for a new trial. It presents no legal argument and cites no cases or statutes. It is well settled that the credibility of witnesses is a matter entirely within the discretion of the trier of fact (*People v. Buie* (1992), 238 Ill. App. 3d 260, 606 N.E.2d 279, *appeal denied* (1993), 151 Ill. 2d 568, 616 N.E.2d 339), and, in a bench trial, as long as there is some indication that the court weighed the credibility of the witnesses, there is no abuse of discretion. Here, the record shows that the circuit court heard the evidence at the hearing on the motion for a new trial, carefully weighed the evidence, and determined that the

new evidence did not change her evaluation of Glassco's credibility. The circuit court was well within its discretion in refusing to grant a new trial based upon the evidence presented at the hearing on the motion.

## II

Defendant also argues that defense counsel was ineffective in failing to investigate these matters and that his conviction must be reversed as a result. Defense counsel offered no evidence that showed that the building at 4448 was not visible from the attic window of the cottage except Grafton's testimony. According to defendant, reliable evidence existed, and defendant was prejudiced by counsel's failure to investigate. The State maintains that defendant adduced no evidence as to whether trial counsel made any effort to locate witnesses or other evidence. Further, even if defense counsel had located Petrosus and Cerevic, it is not clear that their testimony would have changed the outcome of the trial. Therefore, according to the State, defense counsel was not ineffective, and defendant is not entitled to a new trial.

A defendant claiming ineffective assistance of counsel must show: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that this resulted in prejudice to defendant. (*Strickland v. Washington* (1984), 466 U.S. 688, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) In making this determination, a reviewing court must be deferential and not attempt to judge the performance of trial counsel unfairly; this should be done in light of the case at the time of trial, and not with the benefit of hindsight. (*People v. Jenkins* (1989), 190 Ill. App. 3d 115, 545 N.E.2d 986, *appeal denied* (1990), 129 Ill. 2d 568, 550 N.E.2d 562.) It is not enough for defendant to show that the alleged errors had some conceivable effect on the outcome of the proceeding. (*Strickland*, 466 U.S. at 693, 80 L. Ed. 2d at 697, 104 S. Ct. at 2067.) Rather, a defendant is required to show that there is a reasonable probability that, absent the error, the fact finder would have had a reasonable doubt respecting guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) This determination must be made on the basis of the entire record, not isolated instances. *People v. Lovitz* (1984), 127 Ill. App. 3d 390, 468 N.E.2d 1010.

Where a defendant has been prejudiced by the acts or omissions of his counsel's inadequate representation, the defendant may be entitled to a new trial. (*People v. Rodgers* (1978), 58 Ill. App. 3d 719,

374 N.E.2d 721.) Because an attorney is incompetent does not necessarily entitle a defendant to a new trial, however, because a defendant is entitled to a fair trial, not a perfect trial. (*People v. Yarbrough* (1968), 97 Ill. App. 2d 457, 240 N.E.2d 200.) Therefore, in order to prevail on a claim of ineffective assistance of counsel based on a failure to investigate, defendant must show that substantial prejudice resulted and that there was a reasonable probability that the final result would have been different had counsel properly investigated. (*People v. Elliott* (1977), 46 Ill. App. 3d 887, 361 N.E.2d 852; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) A reasonable probability is a probability sufficient to undermine the outcome. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) The failure to investigate alone can constitute ineffective assistance of counsel if it was prejudicial and did not conform to minimal professional standards. (*Keys v. Duckworth* (7th Cir. 1984), 761 F.2d 390; *People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3.) Failure of counsel to investigate a defense properly may indicate actual incompetence constituting ineffective assistance. (*People v. Krankel* (1985), 131 Ill. App. 3d 887, 476 N.E.2d 777.) Whether counsel's failure to investigate amounts to ineffective assistance depends upon the value of the evidence and the closeness of the case. *People v. Dillard* (1990), 204 Ill. App. 3d 7, 561 N.E.2d 1219.

■ In this case defendant cannot establish either prong of the *Strickland* test. Although the failure by trial counsel to contact witnesses who could have a serious impact on a case could support a claim of ineffective assistance (*People v. Finley* (1991), 222 Ill. App. 3d 571, 584 N.E.2d 276), defendant here adduced no evidence as to whether trial counsel made any efforts to locate Petrosus or Cerevic, or as to the effort expended by the public defender's office to locate them. Because they did not testify, defendant asks this court to infer that counsel did not investigate. We can draw no such inference from this record. Additionally, as the trial court noted in its findings, there was nothing in the fact that Petrosus had lived at 4446 South Hermitage that would indicate that he had ever been in the building at 1748 West 45th Street, or that he would know what could be seen from the attic window. Further, to say that counsel's failure to call Cerevic, who had lived in the cottage 20 years earlier, as a witness is evidence of incompetence is the kind of second-guessing that *Strickland* does not permit. Counsel had Dawn Gramont's testimony with which to contradict Glassco's, and he presented it. Defendant cannot complain that this defense was not presented, but only that it was not presented in the quantity he now would prefer.

Moreover, even if defense counsel had succeeded in locating Petrosus and Cerevic and had presented them as witnesses, it is by no means clear that their testimony would have changed the outcome of the trial. Glassco's testimony was not the only evidence which convicted defendant, and evidence casting doubt on its veracity would not necessarily have led to acquittal. Since this was a bench trial, the same judge who heard all of the evidence in the role of fact finder and who found defendant guilty also heard the additional evidence presented at the post-trial hearing. The trial judge was thus in a unique position to evaluate all of the evidence and make a determination as to the effect of the new evidence. She did exactly this and determined that it did not change her finding. Thus, defendant failed to meet the second prong of the *Strickland* test, in that he failed to demonstrate that his counsel's conduct was so deficient that it undermined the proper functioning of the adversarial process and thereby brought into question the integrity of the finding.

When viewed as a whole, defendant's trial counsel's performance cannot be called ineffective, and any errors or omissions on his part do not rise to the level of depriving defendant of his right to a fair trial. Here, trial counsel filed a motion to suppress defendant's coerced confession, litigated, and won it. He filed a motion *in limine* to exclude three witnesses from testifying as a result of the suppression of defendant's statement, and succeeded in preventing the testimony of one of them. He cross-examined all of the State's witnesses in a way that made it clear that he had studied and understood the import of the discovery materials, the police reports, the medical examiner's protocol, and the available grand jury testimony. He made and argued numerous objections. He made and argued at length a motion for a finding of not guilty at the close of the State's case. These are not the actions of a trial attorney just going through the motions or neglecting his case. Although he presented no case in chief, choosing instead to make the State prove defendant's guilt beyond a reasonable doubt, this is a viable trial strategy and one that is not in and of itself evidence of ineffective assistance. (*People v. Barrow* (1989), 133 Ill. 2d 226, 549 N.E.2d 240, *cert. denied* (1990), 497 U.S. 1011, 111 L. Ed. 2d 767, 110 S. Ct. 3257.) Further, not even defendant alleges this as ineffective assistance.

We find the circuit court properly denied defendant's motion for a new trial based upon alleged ineffective assistance of counsel.

### III

Defendant next argues that the testimony of Gramont and Glassco was improperly admitted and that without their testimony

he could not have been convicted. He asserts that this 1984 fire investigation was reopened only because of his illegally obtained statement, and the challenged evidence was not attenuated from that illegality. The State responds that because the police had knowledge of the existence of Gramont and Glassco prior to defendant's questioning, and because defendant had been a suspect in the earlier investigation because of an anonymous tip, when defendant came to their attention in the later arson, Gramont and Glassco were properly allowed to testify.

In defendant's motion to suppress, he asked the court to suppress his "confessions, statements or admissions." Following the suppression of his statement, the State properly notified defendant of its intention to call Gramont, Glassco, and Michelle Briton as witnesses. Defendant then litigated his motion *in limine* to determine whether they had come to police attention only because of his suppressed statement. Had defendant been able to show this with regard to Gramont and Glassco, as he did with regard to Briton, it would have been the State's responsibility to show sufficient attenuation, or face suppression of their testimony. But since Gramont and Glassco were already known to the police, the attenuation issue was never addressed.

Both the direct and indirect products of unconstitutional police conduct must be suppressed under the "fruit of the poisonous tree" doctrine. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) If the proposed evidence would not have been uncovered but for the police misconduct, the attenuation doctrine comes into play. "[T]he more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 487-88, 9 L. Ed. 2d at 455, 83 S. Ct. at 417.

■ When, however, the same facts are "gained from an independent source they may be proved like any others"; they do not become "sacred and inaccessible." (*Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 392, 64 L. Ed. 2d 319, 321, 40 S. Ct. 182, 183.) In this case, Gramont and Glassco were both named in 1984 police reports. Defendant had been a suspect in the Hermitage arson because of an anonymous tip. When he again came to police attention because of a 1987 arson which he reported, that fact alone was enough for the police to reopen the earlier investigation and contact potential witnesses. Accordingly, we cannot say that the circuit court's ruling that the testimony of Gramont and Glassco did not violate the fruit of the poisonous tree doctrine, was improper.

## IV

Defendant next argues that his due process rights and right to confront witnesses were violated as a result of the limitations placed upon his cross-examination of witnesses. Specifically, he asserts that his cross-examination of Detective Leonard Rolston was improperly curtailed when he was kept from asking when Gramont testified before the grand jury, and that his cross-examination of Glassco was improperly curtailed when he was prevented from asking about the terms of Glassco's Treatment Alternatives and Substance Counseling (TASC) sentence and whether Glassco provided false information to IPS officials. The State responds that, in fact, defendant was not prevented from asking Rolston when Gramont testified before the grand jury, and that Glassco's alleged falsehood did not involve a criminal conviction and was about a matter totally unrelated to the issues at trial.

During the redirect examination of Detective Ralston during the hearing on the motion *in limine*, the following exchange took place:

"Q. [Defense Counsel:] And when did she hit the Grand Jury.

[Assistant State's Attorney]: Objection, no relevance.

THE COURT: Overruled.

[Defense Counsel]: When did Miss Gramont get to the Grand Jury?

A. I don't know, counselor, I don't recall the date.

Q. Well, how long after you first talked to her, it was the same day, wasn't it.

[Assistant State's Attorney]: Objection, no relevance as to when she appeared before the Grand Jury.

THE COURT: What difference does it make, counselor?

[Defense Counsel]: No further questions, Judge."

■ Defendant cannot complain on appeal that evidence was improperly excluded when the circuit court did not in fact exclude it. The court simply asked defense counsel a question before ruling on the objection, and defense counsel withdrew the question. The objection was never sustained. Even if the objection had been sustained, in order to preserve the issue for appeal counsel should have made an offer of proof. (*People v. Andrews* (1992), 146 Ill. 2d 413, 588 N.E.2d 1126.) There was no offer of proof, and in fact no exclusion of testimony. There was thus no error, reversible or otherwise.

At trial, during the cross-examination of Glassco the following exchange took place:

"THE WITNESS: I was in jail for burglary, theft and violation of probation.

Q. And, by the way, in your violation of probation the probationary sentence that you got—

[Assistant State's Attorney]: Objection as to what the sentence is.

THE COURT: Sustained. Counsel can you give me any kind of reason as to why that has any relevance to any of the issues in this trial?

[Defense Counsel]: Well, judge, respectfully, I think the issue, if I may address it, was that probationary sentence was to TASC, which would indicate the defendant was a drug user in 1987 at the time he—

THE COURT: You can ask him just that question.

[Defense Counsel]: Well, the sentence would have been four years probation to TASC.

THE COURT: Counsel, you can ask him if he's ever had treatment. What I'm saying is the sentence on the VOP really isn't relevant and really should not be part of this record. There's no basis for that.

Q. At the time the violation of probation was because you—

[Assistant State's Attorney]: Objection.

THE COURT: Sustained.

Q. Were you on TASC, in the TASC program?

A. I had six months inpatient, six months out.

[Assistant State's Attorney]: Objection.

THE COURT: Sustained. Counsel, he indicated he uses drugs. I really don't understand why this is relevant or contributory to any material issue or issue in this trial.

Q. Well, just let me ask you a question: Did you provide the IPS officials with false documents concerning your attendance at drug treatment?

[Assistant State's Attorney]: Objection, judge.

THE COURT: Sustained.

[Defense Counsel]: Judge, I think it's certainly relevant that he lied to the TASC people and committed forgery.

THE COURT: Counsel, I said sustained. Move forward.

[Defense Counsel]: Yes, ma'am."

While it is permissible to show that a witness in a criminal case has a bad reputation for truth and veracity (*People v. Smith* (1974), 21 Ill. App. 3d 366, 316 N.E.2d 170), it is not permissible to reflect on a witness' credibility by establishing that on a former occasion he lied about a totally unrelated matter. (*Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 299 N.E.2d 108 (only criminal convictions may be used to impeach such a witness).) Evidence involving charges of untruthfulness which injuriously affects the administration of justice, such as perjury, is relevant (*People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563), but mere evidence of the commission of the

offense is inadmissible. *People v. Cameron* (1989), 189 Ill. App. 3d 998, 546 N.E.2d 259.

Here, the fact of Glassco's prior convictions was properly admitted. The sentence to TASC was simply not relevant. In any case, Glassco had admitted to drug use. Additionally, defendant could not show that Glassco was charged with or convicted of forgery or perjury in connection with the alleged false representations made to TASC officials. He sought merely to admit testimony that Glassco lied on another occasion in a matter completely unrelated to defendant's trial.

Evidence of prior misconduct may be used to show bias, interest, or motive to testify falsely. (*People v. Phillips* (1981), 95 Ill. App. 3d 1013, 420 N.E.2d 837.) Such evidence must give rise to the inference that the witness has something to gain or lose by his testimony. (*People v. Bristow* (1980), 80 Ill. App. 3d 535, 400 N.E.2d 511.) In this regard, evidence of Glassco's plea bargain and the conduct covered by it were clearly admissible. But defendant has not shown how Glassco's alleged past dishonesty could be used to show bias, interest, or motive to testify falsely. The required nexus was missing.

A circuit court's decision regarding the scope of cross-examination is discretionary and will not be altered on appeal unless an abuse of discretion is found which causes manifest prejudice. (*People v. Phillips* (1981), 95 Ill. App. 3d 1013, 420 N.E.2d 837.) Neither the evidence of Glassco's sentence, nor the evidence of Glassco's alleged dishonesty with TASC officials was admissible, and the circuit court did not abuse its discretion in excluding it.

V

Defendant next argues that the circuit court erroneously excluded from evidence two foundation base maps during the hearing on the motion for a new trial. He asserts that an adequate foundation for the admission of the maps was laid. The State responds that because the term "structure base" was not defined, and the scales of the maps were not discussed, the foundation was insufficient.

The admissibility of a map is within the discretion of the circuit court (*People v. Hampton* (1969), 105 Ill. App. 2d 228, 245 N.E.2d 47), and absent an abuse of that discretion, this court will not disturb the circuit court's decision. *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199.

In this case, two witnesses (Charles Petrosus and Ronald Cerevic) identified the exhibits as maps of the neighborhood where the fire occurred, and a third witness (Thomas Brosnan) also testified as to particular points on the map, but no other foundational or authenti-

cation testimony was adduced. When it ruled the maps inadmissible, the circuit court said:

"Again, the structured base maps, I have some difficulty with those. I have no idea what the scale was or whether *** relative positions were correct, where they came from or what they were, and I don't think there was sufficient foundation laid for the court to admit them into evidence."

■ It must be recalled that this ruling took place during a hearing on a motion for a new trial, not during trial, and that the judge had acted as the trier of fact. The court was therefore not deciding what exhibits to allow the trier of fact to see, it was analyzing the exhibits from the perspective of the trier of fact as well. The court was therefore in a unique position to assess the relevance of the exhibits, and it determined that the foundation was inadequate. Such a determination cannot be called an abuse of discretion.

However, even if the decision to exclude the copies of the map from evidence in the post-trial hearing was error, the error was harmless. The court admitted an aerial photograph of the same neighborhood (defendant's exhibit 14) into evidence. This exhibit contained substantially the same information as the two excluded maps, and defendant cannot show how the exclusion of the maps prejudiced him. An error in the exclusion of evidence does not warrant reversal if there is no prejudice. *Cole v. Guy* (1989), 183 Ill. App. 3d 768, 539 N.E.2d 436, *appeal denied* (1989), 127 Ill. 2d 613, 545 N.E.2d 106.

## VI

Defendant next argues that he was denied a fair trial when the State asked Gramont about her prior inconsistent testimony before the grand jury and then failed to offer evidence of the prior testimony. The State responds that defendant has waived the issue by failing to object at trial. The State also maintains that Gramont admitted to substantially all of the prior testimony, and that because the judge, and not a jury, was sitting as the finder of fact, no substantial prejudice occurred.

When a witness is asked about, and denies making, a prior inconsistent statement, it is incumbent upon the examiner to offer evidence that the statement was, in fact, made. (*People v. Moore* (1973), 54 Ill. 2d 33, 294 N.E.2d 297, *cert. denied* (1973), 412 U.S. 943, 37 L. Ed. 2d 404, 93 S. Ct. 2787.) Proof that the prior statement was made is also required when the witness claims not to remember having made the statement; however, if a witness admits having made the statement, the actual statement need not be introduced. (*People v.*

*Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461, *cert. denied* (1982), 455 U.S. 948, 71 L. Ed. 2d 661, 102 S. Ct. 1448.) Failure to provide such evidence does not necessarily require reversal. For example, a prosecutor's reference to a defendant's guilty admission does not require reversal where there is positive evidence of guilt. (*People v. Allen* (1959), 17 Ill. 2d 55, 160 N.E.2d 818; *People v. Cain* (1979), 70 Ill. App. 3d 1, 388 N.E.2d 54.) Additionally, where there was no objection at trial to the unperfected impeachment the error is waived. *People v. Sanders* (1988), 168 Ill. App. 3d 295, 522 N.E.2d 715, *appeal denied* (1988), 122 Ill. 2d 589, 530 N.E.2d 259.

When Gramont's answers to the State's questions were not the expected ones, the State began to impeach her with her grand jury testimony. Defendant objected to the form of the impeachment, and during a side bar the State informed the court that it was unable to confront Gramont with her exact words to the grand jury or the questions she had been asked there because the notes of her testimony had been destroyed in a house fire before they could be transcribed. The State, however, was seeking to have Gramont's testimony before the grand jury admitted for substantive purposes, pursuant to section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1). The State said it would use the notes of the assistant State's Attorney who had presented Gramont to the grand jury, and it was prepared to call him as a witness to complete the impeachment. The court ruled that although the specific questions previously asked of Gramont could not be put to her, the substance of those questions could be put to her.

Section 115—10.1 of the Code of Criminal Procedure of 1963 states in relevant part as follows:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath at a trial, hearing or other proceeding." (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1.)

All the requirements of the statute were met by the circumstances of Gramont's testimony.

When Gramont was asked about her grand jury testimony, she stated that she did tell the grand jury that defendant had left the cottage four times the night of the fire, that she had followed him, that defendant had climbed a light pole behind 4448 South Hermitage

and cut power to the light, that he went over to that light pole a second time, that he went to the rear of the building at 4448 and looked through the back door, that when he left the cottage for a fourth time she did not follow him, and that he returned 15 minutes later. She stated that she did not remember whether she told the grand jury that defendant's clothes smelled like smoke. She also did not recall testifying in front of the grand jury that defendant said that he had an "instinct" that there was going to be a fire. She admitted that she had testified there would be a fire near the light pole where he had been earlier that night. Although she did not know whether she told the grand jury that she heard defendant tell Glassco that he had started the fire, she did admit that she told the grand jury that defendant told her he started the fire.

■ Defendant therefore maintains that the State failed to offer evidence to prove Gramont made the three statements to the grand jury that she said she either did not recall making or did not know she made. Defendant is correct: not only did the State not offer the verbatim statements from a transcript of the grand jury testimony, because the transcripts were not available, the State also failed to call the assistant State's Attorney who could have completed the impeachment by verifying the grand jury testimony. However, although defendant objected to the *form* of the impeachment, he never objected to the State's failure to prove the three inconsistent statements. As a result, the error was waived. (*Sanders*, 168 Ill. App. 3d at 309.) Moreover, in applying plain error analysis, we conclude that the failure properly to complete the impeachment as to the three statements did not prejudice defendant.

## VII

Defendant next argues that his motion for substitution of judges for cause should have been granted. He asserts that the trial judge was shown to be prejudiced against him by the testimony of his wife and his mother. The State responds that defendant failed to show any actual prejudice and that his motion was properly denied.

On a motion for substitution of judges for cause, the burden of establishing actual prejudice rests on the defendant. (*People v. Nickols* (1976), 41 Ill. App. 3d 974, 354 N.E.2d 474.) A defendant's right to a substitute judge is not absolute, but requires substantiation to ensure that the claim of prejudice is not frivolously made. (*People v. Marshall* (1988), 165 Ill. App. 3d 968, 521 N.E.2d 538, *appeal denied* (1988), 119 Ill. 2d 567, 522 N.E.2d 1252.) To conclude that a judge must be disqualified because of prejudice is a judgment not to be made lightly; it will be viewed by some as reflecting unfavorably

upon the judge, and it tends to disrupt the orderly functioning of the judicial system. (*People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867.) Absent a showing of animosity, ill will, or distrust toward defendant, the judge will not be disqualified. *People v. Vance* (1979), 74 Ill. App. 3d 446, 393 N.E.2d 91.

■ Here, the judge who presided at the hearing on the motion carefully considered all of the evidence presented and summarized it. He then denied the motion, stating that "judges *** have to rule upon the law and the facts as they see them to be. And based upon my review of the transcript and the evidence I have heard that I believe that is what Judge Morgan has done, and therefore most respectfully your motion for substitution of judges for cause will be denied, the matter will be transferred back to Judge Morgan instanter." Since that ruling was squarely within the circuit court's discretion, and since there is ample evidence in the record to support it, we will not disturb it.

## VIII

Defendant next argues that the evidence was insufficient to establish his guilt beyond a reasonable doubt. He asserts that the testimony of Captain Francis Burns was insufficient to establish that the fire was of an incendiary nature and that Glassco's testimony was not credible. The State responds that Glassco's credibility was a matter considered by the circuit court and found sufficient; that his testimony was corroborated by Gramont's testimony; and that Burns' expert opinion that the fire was deliberately set was based upon physical evidence and was completely uncontradicted.

As a preliminary matter, it is important to note that evidence that was not before the trier of fact should not be used by a reviewing court to determine the sufficiency of the evidence on appeal. (*People v. Tipton* (1980), 78 Ill. 2d 477, 401 N.E.2d 528; *People v. Morgan* (1977), 69 Ill. 2d 200, 370 N.E.2d 1063, *overruled by People v. Schott* (1991), 145 Ill. 2d 188, 582 N.E.2d 690.) Defendant's exhibits which were introduced only at the hearing on defendant's post-trial motion, then, will not be considered by this court in ruling on this issue.

When presented with a challenge to the sufficiency of the evidence, it is the function of a reviewing court to examine the evidence carefully, giving due consideration to the fact that the circuit court saw and heard the witnesses. (*People v. Bryant* (1993), 241 Ill. App. 3d 1007.) The Illinois Supreme Court in *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453, employed the standard articulated by the United States Supreme Court in *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781, and stated that such an inquiry

does not require a court to ask whether it believes that the evidence at trial established defendant guilty beyond a reasonable doubt, but whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Young*, 128 Ill. 2d at 49.) It is thus the responsibility of the trier of fact to resolve conflicts of testimony fairly, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. (*Young*, 128 Ill. 2d at 49.) The credibility of the witnesses is entirely a matter for the trier of fact to determine. *People v. Wittenmyer* (1992), 151 Ill. 2d 175, 601 N.E.2d 735.

■ The *corpus delicti* in arson consists of a burning and a fire of incendiary origin. (*People v. Lawson* (1990), 193 Ill. App. 3d 425, 549 N.E.2d 1006, *appeal denied* (1990), 131 Ill. 2d 563, 553 N.E.2d 399.) The State had to show that the burning of a building occurred and that defendant was criminally responsible. (*People v. Taylor* (1972), 6 Ill. App. 3d 343, 285 N.E.2d 489, *aff'd & remanded* (1974), 58 Ill. 2d 69, 317 N.E.2d 97.) There is no question that the burning of a building occurred; defendant does not challenge the State's proof of that. The State proved the incendiary nature of the fire through the testimony of Burns, qualified as an expert and not challenged or contradicted at trial. Burns testified that, in his opinion, a combustible material had been brought to the origin of the fire, an accelerant had been used, and the fire was incendiary in nature. This is sufficient evidence for the trier of fact to find the fire was incendiary in nature. Finally, the State proved defendant's criminal responsibility through the testimony of Glassco and, although she recanted at trial, through the grand jury testimony of Gramont, which was found to be credible by the court.

Defendant presents no evidence adduced at trial that directly contradicts Glassco's testimony except the recantation testimony of Gramont, which the circuit court specifically found completely lacking in credibility. Further, all of the elements pointed out by defendant about Glassco's credibility—his prior felony convictions, his drinking and using cocaine on the night of the fire, his plea bargain in exchange for testimony, and his inconsistent grand jury testimony—were presented at trial, and the circuit court in its findings expressly weighed them. The trier of fact determined Glassco to be a credible witness, and we will not set aside that judgment.

Viewing the evidence adduced at trial in the light most favorable to the prosecution, it cannot be said that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. There is thus no basis for concluding that the evidence was not sufficient.

## IX

Defendant finally argues that the circuit court's material mistakes of fact denied him due process of law and a fair trial. He asserts that the court made errors of fact in its findings at trial and at the post-trial hearing. The State responds that the court made no such errors and that it accurately summarized and carefully considered the evidence adduced both at trial and at the post-trial hearing.

Where the record shows that the circuit court did not remember or consider the crux of the defense when entering judgment, a reviewing court will find that a defendant's due process rights and right to a fair trial have been violated. (*People v. Bowie* (1976), 36 Ill. App. 3d 177, 343 N.E.2d 713.) In *Bowie*, the judge, sitting as trier of fact, either forgot or completely discounted defendant's testimony establishing his claim of self-defense. The appellate court held that this denied defendant a fair trial.

■ In this case, defendant contends that the circuit court mischaracterized the evidence of what Glassco could have seen from the attic window. The court's comments on the photographs entered into evidence at trial were as follows:

> "When I look at these photographs and I look at the X that has been placed on People's Exhibit No. 25 indicating the window out of which Mr. Glassco has testified that he watched the movements of the defendant in the yard behind 4448 South Hermitage, and if you look as I did at the companion photographs, and you really have to look at them all in order to get those spatial relationships, I do note, and I think the exhibits will bear out, that Mr. Glassco was correct when he said there was nothing that was obscuring his vision.
>
> When you look at these photographs and you see where the buildings were that burned down and are no longer there and are not depicted in these photographs it's fairly apparent to me, and there is nothing rebutting that, that one could certainly see what was going on in that yard at 4448 South Hermitage in terms of one's line of vision.
>
> Albeit that he testified that this window was eight by eight, but I think the laws of physics make it clear, if one just thinks about one's own perception in terms of sight, range and scope of what one can see through various size apertures, I don't have any doubt that he could see that yard that he claimed and testified that he could see."

These comments indicate that the court looked carefully at all of the photographs in conjunction with Glassco's testimony and determined that they corroborated his claim that he could see from the window of the cottage into the yard at 4448 South Hermitage. The court did

not state, as defendant asserts, that the photographs illustrated defendant's line of sight. The court made no error here, and defendant was not denied a fair trial.

Defendant's second claim of factual error arises from the hearing on the post-trial motions. Defendant alleges that, following the presentation of evidence, the circuit court stated that in reviewing the transcript it found that Glassco never said he could see defendant enter the building at 4448 South Hermitage.

What the court actually said was:

"[A]s I look back over the transcript, I never saw Dwayne Glassco saying that he could see the house at 4448. What he did testify to was that he could see from the back of the house into the yard. He never testified he could see the entire house."

Later, the court also stated:

"Looking back at the testimony of Mr. Petrosus and Mr. Cerevic and the testimony of Dawn Gramont who testified again on the motion for a new trial, the question becomes whether Mr. Petrosus and Mr. Cerevic and Ms. Gramont, who contradicted Dwayne Glassco at least apparently contradicted Dwayne Glassco in that Dwayne Glassco never said I can see the house at 4448. What he said was he could see from the back of the house into the yard. So I am saying it apparently contradicted it."

Examination of Glassco's testimony shows that the court was correct in its summary. Glassco never testified that he could see the entire house at 4448 South Hermitage from the attic window of the cottage. He said, "I could see from the back of the building to the garage. You can see the whole yard from the window." He also stated that the back door of the building was visible. The court never stated, as defendant asserts, that Glassco never said he saw defendant enter the house. Such a statement by the court cannot be found in the record.

Unlike in *Bowie*, in this case the court neither forgot nor failed to consider the crux of the defense. Consequently, defendant was not denied a fair trial, and this court will not reverse his conviction on these grounds.

For all the reasons given above, we affirm defendant's conviction.

Affirmed.

McCORMICK, P.J., and SCARIANO, J., concur.