THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KARLTON WEST, Defendant-Appellant.

Fourth District   No. 4—86—0607

Opinion filed June 8, 1987.

Daniel D. Yuhas and Timothy M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Karlton West, was convicted of attempt (murder) and aggravated battery after a jury trial in the circuit court of Macon County. He was sentenced to a term of 10 years in the Department of Corrections. Testimony at trial established that at some point prior to the date on which the crime was committed, the complaining witness, Frank Myrick, was a drug addict who was addicted to cocaine. Defendant tendered a jury instruction which would have required the jury to view with caution the testimony of a drug addict. The instruction was refused and the defendant appeals his conviction and sentence based on the trial court's refusal to give the tendered instruction. We affirm.

The evidence at trial consisted of testimony by Myrick, defendant, and several other men with whom they spent the afternoon and evening of May 1, 1986. David Voudrie testified he rented an apartment in Decatur where Richard Lyda and Stephen Doty had joined him to watch television during the afternoon of May 1. Myrick joined them late in the afternoon. Voudrie, Lyda, and Doty disagreed as to the exact time of day when Myrick joined them but did agree he was intoxicated when he arrived and continued to drink with them throughout the remainder of the afternoon and into the evening.

Defendant joined the group in the apartment about 6 p.m., had a quick drink, and left. He rejoined the group about 8:30 p.m. During the course of the evening, defendant and Myrick quarreled, although the testimony conflicted as to whether the quarrel was legitimate or merely play-acting.

Between 9:30 and 10 p.m. Doty went to lie down in the bedroom of the apartment due to his intoxicated state, and Voudrie fell asleep on the couch in the living room in the same condition. Myrick testified the remaining three men continued to drink until 10:45 or 11 p.m. Sometime before 11 p.m. Lyda left the apartment. As Myrick prepared to leave about 11 p.m., defendant pulled out a long-bladed knife which had been tucked in the back of his belt and stabbed Myrick in the left side.

Myrick testified defendant then transferred the knife to his right hand, hit him over the head with it, and left the apartment.

Myrick called for an ambulance and was transported to the emergency room at Decatur Memorial Hospital. He was treated for stab wounds to the left side of his chest made with a fairly long, narrow object. The treating physician testified that a great amount of force was required to cause the type of puncture wound found. During the course of treatment, the physician testified that Myrick's blood was tested and its blood-alcohol content was measured at .309.

Defendant was arrested on the evening of May 4, 1986, after Myrick identified him as his assailant. The arresting officer testified that when arrested defendant was wearing a sheath attached to his belt resting over his right hip. The sheath contained a large folding knife.

Defendant's testimony acknowledged his presence at Voudrie's apartment on the date in question and also that he had a quarrel at that time with Myrick. He denied stabbing Myrick.

As Myrick was the only witness to the assault, defense counsel sought to discredit him at trial by showing that he had a psychiatric and drug history that adversely affected his credibility. Defense cross-examination of Myrick on these issues was as follows:

"[Jerry Finney defense counsel]:

Q. Mr. Myrick, have you been under psychiatric care?

A. Yes, sir, I have been.

Q. Are you presently?

A. I go for treatment off and on, yes.

Q. What's the nature of your psychiatric treatment?

A. Drug use.

Q. For drug use?

A. Yes, sir.

Q. What kind of drugs do you use?

A. I used to do cocaine and everything, I still go for treatment for that.

Q. How often do you do cocaine?

A. I don't do any of that anymore.

Q. Were you addicted to the use of cocaine?

A. I was at that time, yes.

Q. Once you are addicted, you are always addicted, isn't that correct?

A. No, you can break it.

Q. Did you use cocaine on the night of the first of May?

A. No, I didn't.

Q. Have you been treated for schizophrenia?

A. Yes, sir, I have.

Q. Are you presently under treatment for schizophrenia?

A. Not at all. Not at this time in point [*sic*].

Q. When were you?

A. It was two years ago.

Q. Is that characterized by delusions and hallucinations?

A. I don't get them as much as I used to.

Q. How often do you get them now?

A. I haven't had one in a year now.

Q. But you did have hallucinations, is that correct?

A. Yes, sir.

Q. And when you have hallucinations, you would think things were happening, but they really weren't, isn't that correct?

A. At times, yes.

Q. What kind of things would you think were happening but they really weren't?

A. Oh, I would hear voices and just odds and ends, a lot of things through my mind.

Q. Did you ever see things that you thought were happening but they really didn't?

A. Repeat, please.

Q. Did you ever think you saw something but it really didn't happen?

A. No."

At the jury instruction conference, defense counsel tendered the following non-Illinois Pattern Jury Instruction (IPI):

"The testimony of a witness who was addicted to drugs is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in this case."

The State objected to the instruction on the grounds there was no evidence Myrick was presently addicted to drugs, there was no proof drug addiction inclines one to lie, and the instruction would unduly infringe upon the jury's function to assess the credibility of witnesses. The court refused the instruction, stating it was inappropriate and there was insufficient evidence that Myrick's drug use had occurred within the past 12 months.

Although defendant was denied the instruction on the credibility of a drug addict, defense counsel argued to the jury in closing argument that Myrick's drug addiction and schizophrenia severely diminished his credibility as a witness. The argument was made without objection and

the relevant portions follow:

"In order to find Mr. West guilty in this case, you have to be-
lieve beyond a reasonable doubt the testimony of Frank Myrick.
Now, let's look at that testimony. This is a fellow who, first of
all, is an admitted drug addict at some point. This is a fellow
who's a psychiatric patient. He says he's had schizophrenia to
the extent that he's had delusions and hallucinations. He's heard
voices, and this is the testimony that the state's attorney says,
well, gosh, go ahead and believe this guy beyond a reasonable
doubt when he says that something happened to him.

To add to all of that, this is not even a drug addict, schizo-
phrenic who is sober. This guy's got a blood alcohol content of
.309 when he gets to the hospital. .309. That's three times the
legal limit. More than three times."

A witness may be cross-examined as to his drug addiction for the
purpose of impeaching his credibility. (*People v. Crump* (1955), 5 Ill. 2d
251, 125 N.E.2d 615.) The courts in Illinois have been willing to allow
testimony as to a witness' drug addiction, but they have not been as
willing to allow a jury instruction direction that such testimony should
be carefully scrutinized. *People v. McVay* (1981), 98 Ill. App. 3d 708,
424 N.E.2d 922; *People v. Collins* (1977), 48 Ill. App. 3d 643, 362
N.E.2d 1118; *People v. Phillips* (1970), 126 Ill. App. 2d 179, 261
N.E.2d 469.

If an instruction such as that tendered by the defendant in this
case were given, it would unduly highlight the testimony of that wit-
ness and one particular aspect of that witness' character or his ability
to perceive. Although this was a non-IPI instruction, the general
trend in IPI instructions is away from instructions which comment on
particular types of evidence or give undue emphasis to parts of the
evidence in a case. Illinois Pattern Jury Instructions, Criminal, No.
3.00, Introduction (2d ed. 1981) (hereinafter IPI Criminal 2d).

There is a particular danger of undue emphasis on portions of the
evidence where, as here, the evidence did not show Myrick was ad-
dicted at either the time of the occurrence or at the time he testified
in court. The defendant was allowed to argue to the jury that the fact
Myrick was addicted at some point affected his credibility. The jury
was made aware of defendant's position both through cross-examina-
tion and in closing argument and can apply its accumulated knowl-
edge to assessing the witness' credibility, as they were instructed by
IPI Criminal 2d No. 1.02. The instruction sought by the defendant
was not necessary and the defendant was not entitled to have the
jury so instructed.

For the foregoing reasons, the judgment of the circuit court is affirmed. The cause must be remanded for correction of the sentencing order as both the defendant and the State agree that the trial court vacated the aggravated battery conviction at the sentencing hearing because it was based upon the same act as the attempt (murder) conviction but the order still reflects the aggravated battery conviction.

Affirmed and remanded for correction of the sentencing order.

GREEN and McCULLOUGH, JJ., concur.