SIXTH DIVISION
 March 21, 1997











No. 1-95-1376


THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from
 ) the Circuit Court
 Plaintiff-Appellee, ) of Cook County.
 )
 v. ) No. 93-CR-09771
 )
JOHNNIE DANIELS, ) Honorable
 ) James Zafiratos,
 Defendant-Appellant. ) Judge Presiding.



 JUSTICE THEIS delivered the opinion of the court:

 Defendant Johnnie Daniels was tried for first degree murder and
armed robbery in connection with the death of Finest Simmons. The
jury found defendant guilty of armed robbery but acquitted him of the
murder charge. The trial court sentenced Daniels to 14 years in
prison. Defendant appeals his armed robbery conviction pursuant to
Supreme Court Rules 602 and 603. 134 Ill. 2d Rs. 602, 603.
 On appeal, defendant alleges numerous trial errors. Defendant
concedes that he received a speedy trial but argues that his trial
counsel erred by waiving his presence at a hearing to advance the
trial schedule. Defendant also contends the trial court erred by not
holding a hearing on his motion to suppress the testimony of the
State's primary witness, Galen Henderson, which allegedly was obtained
pursuant to an illegal search. Defendant claims the trial court
erroneously barred admission of evidence, limited cross-examination,
and restricted argument regarding Henderson's weapon convictions and
drug addiction. Defendant argues the trial court erred in admitting
Henderson's prior consistent statement to rehabilitate Henderson's
trial testimony. And finally, defendant states the jury instructions
were improper because the trial court: (a) refused to give an
accomplice instruction; (b) erroneously gave a circumstantial evidence
instruction; and (c) refused to give an instruction as to the
credibility of a drug addict's testimony. We affirm. 
 On March 27, 1993, Finest Simmons was shot and killed at the
Regal 8 Motel on Mannheim Road. The State's primary witness was Galen
Henderson. Henderson testified that, on March 26, 1993, at
approximately 11 p.m., he, defendant, Eric Mason, and two women drove
to the Regal 8 Motel. They went to Room 282, where a dice game was in
progress. Henderson, defendant, and Mason were shooting dice along
with Simmons and several other people. People roamed throughout the
room and hallway where drugs were randomly sold.
 According to Henderson, Simmons won about $300 and then left the
game. Henderson, Mason, and defendant all lost money and they too
left the game. The three men drove to defendant's mother's house,
borrowed some money, and returned to the motel. Henderson testified
that defendant then asked Chianta Chatman who had won the game and was
told that Simmons had won. Henderson stated that he and defendant
then went to Simmons's room so that defendant could recover the money
he had lost to Simmons in the dice game. Henderson testified that
defendant pulled out a gun and knocked on the door. Simmons answered
the door and defendant asked him, "Where the money at, man? *** 
Where the money at?" Simmons told defendant, "I ain't got no money,
man," and then Simmons tried to grab the gun. The gun "went off"
three times. Simmons fell backwards and threw the money on the
ground. According to Henderson, defendant grabbed the money and they
went back to Room 282.
 On cross-examination, Henderson testified that defendant had
taken the gun out of his pocket before reaching Simmons's room,
knocked on the door, and waited with the gun drawn for about a minute
before Simmons answered the door. On redirect, over defense counsel's
objection, the State introduced Henderson's prior testimony before the
grand jury which was consistent with his testimony on direct
examination.
 Next, Chianta Chatman testified. Chatman stated that he spoke
with defendant the day after the shooting. At trial, Chatman
testified that defendant said "he didn't give a damn about what
[people] said and how they said it." Over the objection of the
defense, the State then introduced Chatman's prior inconsistent
statement before the grand jury that defendant said, "Fuck it. So
what? I did him."
 Chatman's girlfriend, Ckiquita Thomas, then testified. Thomas,
who was selling drugs on the night of the shooting, stated that
Henderson warned her about two men who were talking about robbing her. 
On direct examination, Thomas said she saw Henderson and defendant
talking near the bathroom. Thomas testified that she overheard them
say "We got to get them before they get us." The State asked Thomas
who was speaking, to which she replied, "I wasn't -- It sounded like
Galen [Henderson], but I wasn't looking in that direction." Over
defense counsel's objection, the State asked Thomas the same question
to clarify her answer. After Thomas gave the same answer as before,
the State then impeached her by introducing her prior grand jury
testimony. Before the grand jury, Thomas had stated, "And I overheard
either [Henderson] or [defendant] -- I can't recognize the voice --
and they said `We want to get them first. " Thomas then testified
that she later went to sleep and awoke to gunshots. After Thomas
heard the gunshots, "I heard my front door close. And when my front
door closed, I seen Eric, [defendant] and Galen [Henderson] walking
out my back door." 
 Eric Mason testified that Henderson and defendant went out the
rear door of Room 282 and then he "heard some pops or something." A
few minutes later, defendant and Henderson knocked on the door of Room
282. Mason let them in and asked them if they heard anything. They
said no and defendant asked Mason to take him home. Mason then left
the motel with defendant and Henderson.
 The final occurrence witness, Ronald Williams, Finest Simmons's
brother, testified that he was in the room with Finest when he was
shot. Williams stated that he was in the bathroom when he heard a
knock at the door. He then heard some people say "give me the money,"
then heard a hit and a single gunshot.
 After all the evidence, the jury acquitted defendant of first
degree murder but convicted him of armed robbery. The court sentenced
defendant to 14 years in prison. For the reasons that follow, we find
that any trial errors were harmless and we affirm the armed robbery
conviction of Johnnie Daniels.
 Defendant first argues that his presence was required at the
hearing on the State's motion to advance and reset the cause from
October 26, 1994, to October 21, 1994. We disagree. Our supreme
court has made clear that any continuance requested or agreed to by
defendant's counsel is properly attributable to the defendant. People
v. Bowman, 138 Ill. 2d 131, 141-43, 561 N.E.2d 633, 638-39 (1990). 
This is so whether or not there is evidence in the record that counsel
consulted with the defendant regarding such a continuance. Bowman,
138 Ill. 2d at 142, 561 N.E.2d at 639, citing People v. Woods, 27 Ill.
2d 393, 395-96, 189 N.E.2d 293, 294 (1963). If anything, a motion to
advance the trial schedule only benefits the defendant. Therefore,
defendant cannot claim error on this issue.
 Defendant next argues that the trial court erred in failing to
hold a hearing on his motion to suppress Galen Henderson's trial
testimony. Defendant claims that Henderson was arrested pursuant to
an illegal search of defendant's home and that he (defendant) had
standing to challenge the warrantless search. The trial court denied
defendant's motion, finding, as a matter of law, that defendant did
not have standing to object to Henderson's trial testimony.
 The trial court erred in holding that defendant did not have
standing to object. However, when a motion to suppress presents a
question of law, our review of the trial court's determination is de
novo. People v. Foskey, 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197
(1990). See United States v. Raddatz, 447 U.S. 667, 65 L. Ed. 2d 424,
100 S. Ct. 2406 (1980). Thus, even assuming defendant had standing to
object to Henderson's trial testimony, was Henderson's in-court
testimony not suppressible as a matter of law? Because we find that
Henderson's testimony was not suppressible, we hold that the trial
court's erroneous ruling on standing was harmless.
 First, defendant had standing to request exclusion of Henderson's
testimony. Assuming defendant's legitimate expectation of privacy in
the home, defendant alleged a violation of his own fourth amendment
rights, not Henderson's. People v. Johnson, 114 Ill. 2d 170, 191, 499
N.E.2d 1355, 1364 (1986), citing Rakas v. Illinois, 439 U.S. 128, 143,
58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430 (1978). Thus, defendant had
standing to request exclusion of the in-court testimony of Galen
Henderson, which was procured by the allegedly illegal search of
defendant's home. See People v. Basile, 21 Ill. App. 3d 273, 277, 315
N.E.2d 293, 297 (1974).
 Resolution of the standing issue, however, does not answer
whether the testimony should be suppressed. "Both the direct and
indirect products of unconstitutional police conduct must be
suppressed under the `fruit of the poisonous tree doctrine." People
v. Kluppelberg, 257 Ill.App. 3d 516, 529, 628 N.E.2d 908, 918 (1993),
citing Wong Sun v. United States, 371 U.S. 471, 484, 9 L. Ed. 2d 441,
453, 83 S. Ct. 407, 416 (1963). As in all exclusionary issues, the
question is whether "the connection between the lawless conduct of the
police and the discovery of the challenged evidence has `become so
attenuated as to dissipate the taint. " Wong Sun, 371 U.S. at 487,
491, 9 L. Ed. 2d at 455, 83 S. Ct. at 417, quoting Nardone v. United
States, 308 U.S. 338, 341, 84 L. Ed. 307, 312, 60 S. Ct. 266, 268
(1939). The touchstone in these cases is "discovery" of the evidence.
 Courts have excluded witness testimony when the identity of the
witness would not have been discovered but for the illegal search. In
People v. Albea, 2 Ill. 2d 317, 323, 118 N.E.2d 277, 280 (1954), the
Illinois Supreme Court excluded such witness testimony when the
identity of the witness was discovered concurrently with the illegal
search. Likewise, in People v. Gonzalez, 268 Ill. App. 3d 224, 230,
643 N.E.2d 1295, 1299 (1994), the court suppressed a witness's
testimony when his identity was obtained as a result of defendant's
illegally obtained confession. See United States v. Ceccolini, 435
U.S. 268, 279, 55 L. Ed. 2d 268, 279, 98 S. Ct. 1054, 1062 (1978)
(establishing attenuation factors for determining exclusion of live
witness testimony). 
 As a threshold matter, we find that Henderson was not a witness
discovered but for the illegal search. His testimony is not fruit of
the poisonous tree requiring exclusion. The exclusionary rule need
not apply if knowledge of the facts that were illegally obtained is
gained from an independent source or independent investigation. Nix
v. Williams, 467 U.S. 431, 443, 81 L. Ed. 2d 377, 387, 104 S. Ct 2501,
2508 (1984); Silverthorne Lumber Co. v. United States, 251 U.S. 385,
392, 64 L. Ed. 319, 321, 40 S. Ct. 182, 183 (1920). Illinois law is
in accord. See Albea, 2 Ill. 2d at 321, 118 N.E.2d at 279; People v.
Lynumn, 21 Ill. 2d 63, 67-68, 171 N.E.2d 17, 20 (1960), rev'd on other
grounds, 372 U.S. 528, 9 L. Ed. 2d 922, 83 S. Ct. 917 (1963). 
Knowledge from independent investigation is often shown when the
police were aware of the witness's identity prior to any illegal
police conduct. Kluppelberg, 257 Ill. App. 3d at 529, 628 N.E.2d at
918. Thus, exclusion is unnecessary when the illegal conduct did not
result in "discovery" of the witness, but merely his "location." 
Basile, 21 Ill. App. 3d at 277-78, 315 N.E.2d at 297.
 In this case, Henderson testified before the grand jury in April
1993, shortly after the murder. The search of defendant's home and
the arrest of Henderson occurred on February 6, 1995, almost two years
after the murder. Henderson and his knowledge of the crime were known
by the police well before the allegedly improper search. Henderson
was not a witness "discovered" incident to the illegal search. 
Accordingly, Henderson's testimony was properly admitted.
 Defendant next claims that the trial court improperly restricted
admission of evidence, limited cross-examination, and confined
argument of Henderson's drug addiction and weapon convictions. We
review the trial court's evidentiary decisions under an abuse of
discretion standard. People v. Hope, 168 Ill. 2d 1, 23, 658 N.E.2d
391, 401 (1995) (admission of evidence); People v. Lewis, 165 Ill. 2d
305, 341, 651 N.E.2d 72, 89 (1995) (scope of cross-examination). 
Defendant first argues that the trial court erroneously restricted
admission of Henderson's prior weapon convictions for impeachment
purposes. We disagree. Henderson's prior weapon convictions were the
subject of a stipulation. This evidence was before the jury. 
Defendant has no basis for claiming error.
 Defendant next complains that the trial court erroneously
restricted admission of testimony concerning Henderson's drug
addiction. Again we disagree. A witness can be cross-examined as to
his drug addiction for impeachment purposes. People v. West, 156 Ill.
App. 3d 608, 612, 509 N.E.2d 153, 155 (1987). In this case, defendant
had ample opportunity to cross-examine Henderson regarding his
prolonged heroin addiction and cocaine use.
 Third, defendant claims that the trial court erroneously limited
his ability to argue Henderson's drug addiction and weapon convictions
as substantive evidence. Defendant attempted to argue this evidence,
not as impeachment, but as substantive evidence to prove Henderson was
the shooter based on a drug motive. The court did not abuse its
discretion by limiting cross and closing argument when defendant's
evidence was speculative. 
 The decision to admit a witness's prior convictions rests within
the sound discretion of the trial court. People v. Chapman, 262 Ill.
App. 3d 439, 461, 633 N.E.2d 718, 732 (1992). An accused may attempt
to show someone else committed the crime but this right is not
limitless. People v. Ward, 101 Ill. 2d 443, 455, 463 N.E.2d 696, 701-
02 (1984). The evidence must tend to prove the particular offense
charged and be relevant and probative. Ward, 101 Ill. 2d at 455-56,
463 N.E.2d at 702.
 For example, in People v. Wilson, 254 Ill. App. 3d 1020, 1044-47,
626 N.E.2d 1282, 1301 (1993), the court upheld the trial court's
exclusion of a witness's prior convictions for armed robbery and
attempted murder. In so holding, the court observed that the
defendant had not shown "striking similarities" between defendant's
alleged murder of police officers during a routine traffic stop and
the witness's shooting of a police officer during an armed robbery of
an ice cream parlor. Wilson, 254 Ill. App. 3d at 1047, 626 N.E.2d at
1301. Likewise, in People v. Chapman, the defendant tried to
introduce a weapon conviction against the State's primary witness to
prove that the witness, not the defendant, was the shooter. Chapman,
262 Ill. App. 3d at 459-60, 633 N.E.2d at 732. The trial court found,
and the appellate court agreed, that the witness's weapon conviction
did not tend to prove a propensity to commit violence, let alone the
murder in question. Chapman, 262 Ill. App. 3d at 460-61, 633 N.E.2d
at 732.
 Here, the trial court did not err in limiting defendant's attempt
to argue the substance of Henderson's prior drug and weapon
convictions. The evidence was too speculative. Both Henderson and
defendant were drug addicts and both had weapon convictions. None of
the evidence offered by the defense concerning Henderson's drug use or
weapon convictions proved Henderson committed the particular crime
charged. The trial court did not err in limiting defendant's argument
of this evidence.
 Defendant also contends that the court erroneously allowed the
State to introduce Henderson's prior consistent statement before the
grand jury to bolster his trial testimony. Defendant has waived this
issue by not including it in his motion for a new trial. People v.
Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). Defendant
urges us to review this issue under the plain error doctrine. To find
plain error, the alleged error must undermine the fairness of the
trial. People v. Keene, 169 Ill. 2d 1, 17, 660 N.E.2d 901, 910
(1995). Either the error must affect substantial rights or the
evidence must be closely balanced. Keene, 169 Ill. 2d at 18; 660
N.E.2d at 910. Admission of prior consistent statements, even if
improper, does not implicate a substantial right. Keene, 169 Ill. 2d
at 18, 660 N.E.2d at 910. Nor was the evidence closely balanced in
this case. We decline to address this issue.
 Last, defendant argues that the trial court's instructions to the
jury denied defendant a fair trial. "An error in a jury instruction
is harmless if it is demonstrated that the result of the trial would
not have been different if the proper instruction had been given." 
People v. Johnson, 146 Ill. 2d 109, 137, 585 N.E.2d 78, 90 (1991). In
this case, the trial court did not err in the instructions it tendered
to the jury. 
 The decision to give a particular jury instruction rests within
the discretion of the trial court. People v. Lewis, 165 Ill. 2d 305,
355, 651 N.E.2d 72, 95 (1995). We find that the trial court did not
err in declining to give an accomplice instruction regarding
Henderson's testimony. The requested jury instruction, Illinois
Pattern Jury Instructions, Criminal, No. 3.17, states:
 "When a witness says he was involved in the
 commission of a crime with the defendant, the
 testimony of that witness is subject to suspicion
 and should be considered by you with caution. It
 should be carefully examined in light of the other
 evidence in the case." IPI Criminal 3d, No. 3.17
 (3d ed. 1992).
 The accomplice witness instruction should be given when "there is
probable cause to believe [the witness] was guilty as a principal or
as an accessory on the theory of accountability." People v.
Henderson, 142 Ill. 2d 258, 314, 568 N.E.2d 1234, 1261 (1990). There
is nothing to indicate that Henderson would be guilty under an
accountability theory. Although Henderson was present when Simmons
was shot, mere presence at the scene of the crime does not hold one
accountable for the offense. People v. Taylor, 164 Ill. 2d 131, 141,
646 N.E.2d 567, 571 (1995). Moreover, Thomas's equivocal testimony
about the conversation between Henderson and defendant did not
establish a common criminal plan or purpose. Taylor, 164 Ill. 2d at
141, 646 N.E.2d at 571. The trial court did not abuse its discretion
in determining that an accomplice witness instruction was unnecessary. 
There was no evidence to suggest that Henderson participated in or was
accountable for defendant's commission of the crime.
 Even if the trial court erred in not providing an accomplice
instruction, any error was harmless because evidence questioning
Henderson's credibility was elicited elsewhere. People v. Hoard, 249
Ill. App. 3d 21, 32, 618 N.E.2d 808, 817 (1993). By his own
testimony, Henderson admitted prior convictions for cocaine possession
and robbery. He also admitted to his cocaine use and heroin
addiction. Henderson's prior weapon convictions were admitted through
stipulation. Henderson testified about living in the witness quarters
and about whether any promises were made by the State regarding other
convictions. Henderson also testified that he told his wife and her
aunt that he implicated defendant because the police tricked him. 
This statement was confirmed by both women. And finally, another
witness testified as to Henderson's poor reputation for honesty. 
Given the volume of evidence attacking Henderson's credibility, any
error was harmless.
 The trial court also did not err by giving a circumstantial
evidence jury instruction. IPI Criminal 3d, No. 3.02 (3d ed. 1992). 
Defendant waived this issue by not preserving it in his motion for new
trial. Enoch, 122 Ill. 2d at 186, 522 N.E.2d at 1130. The trial
court's decision to give a circumstantial evidence instruction was
discretionary and, thus, not plain error. Lewis, 165 Ill. 2d at 355,
651 N.E.2d at 95.
 Likewise, the trial court properly determined that no specific
jury instruction as to a drug addict's testimony was needed because
the general instruction regarding jurors weighing witness credibility
was sufficient. IPI Criminal 3d, No. 1.02 (3d ed. 1992). Courts are
reluctant to give a non-IPI drug addiction jury instruction as it
places undue emphasis on particular evidence in a case. People v.
West, 156 Ill. App. 3d 608, 612, 509 N.E.2d 153, 155 (1987). Here,
defendant was allowed to argue extensively to the jury that
Henderson's addiction undermined his credibility. Again, the record
demonstrates that Henderson's credibility was sufficiently impugned at
trial. 
 For the foregoing reasons, we affirm the conviction of Johnnie
Daniels for the armed robbery of Finest Simmons.
 Affirmed.
 HOFFMAN and O'BRIEN, JJ., concur.