THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNIE DANIELS, Defendant-Appellant.

First District (6th Division)    No. 1—95—1376

Opinion filed March 21, 1997.

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Jon J. Walters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Defendant Johnnie Daniels was tried for first degree murder and armed robbery in connection with the death of Finest Simmons. The jury found defendant guilty of armed robbery but acquitted him of the murder charge. The trial court sentenced Daniels to 14 years in prison. Defendant appeals his armed robbery conviction pursuant to Supreme Court Rules 602 and 603. 134 Ill. 2d Rs. 602, 603.

On appeal, defendant alleges numerous trial errors. Defendant concedes that he received a speedy trial but argues that his trial counsel erred by waiving his presence at a hearing to advance the trial schedule. Defendant also contends the trial court erred by not holding a hearing on his motion to suppress the testimony of the State's primary witness, Galen Henderson, which allegedly was

obtained pursuant to an illegal search. Defendant claims the trial court erroneously barred admission of evidence, limited cross-examination, and restricted argument regarding Henderson's weapon convictions and drug addiction. Defendant argues the trial court erred in admitting Henderson's prior consistent statement to rehabilitate Henderson's trial testimony. And finally, defendant states the jury instructions were improper because the trial court: (a) refused to give an accomplice instruction; (b) erroneously gave a circumstantial evidence instruction; and (c) refused to give an instruction as to the credibility of a drug addict's testimony. We affirm.

On March 27, 1993, Finest Simmons was shot and killed at the Regal 8 Motel on Mannheim Road. The State's primary witness was Galen Henderson. Henderson testified that, on March 26, 1993, at approximately 11 p.m., he, defendant, Eric Mason, and two women drove to the Regal 8 Motel. They went to room 282, where a dice game was in progress. Henderson, defendant, and Mason were shooting dice along with Simmons and several other people. People roamed throughout the room and hallway where drugs were randomly sold.

According to Henderson, Simmons won about $300 and then left the game. Henderson, Mason, and defendant all lost money and they too left the game. The three men drove to defendant's mother's house, borrowed some money, and returned to the motel. Henderson testified that defendant then asked Chianta Chatman who had won the game and was told that Simmons had won. Henderson stated that he and defendant then went to Simmons's room so that defendant could recover the money he had lost to Simmons in the dice game. Henderson testified that defendant pulled out a gun and knocked on the door. Simmons answered the door and defendant asked him, "Where the money at, man? *** Where the money at?" Simmons told defendant, "I ain't got no money, man," and then Simmons tried to grab the gun. The gun "went off" three times. Simmons fell backwards and threw the money on the ground. According to Henderson, defendant grabbed the money and they went back to room 282.

On cross-examination, Henderson testified that defendant had taken the gun out of his pocket before reaching Simmons's room, knocked on the door, and waited with the gun drawn for about a minute before Simmons answered the door. On redirect, over defense counsel's objection, the State introduced Henderson's prior testimony before the grand jury, which was consistent with his testimony on direct examination.

Next, Chianta Chatman testified. Chatman stated that he spoke with defendant the day after the shooting. At trial, Chatman testified that defendant said "he didn't give a damn about what [people] said

and how they said it." Over the objection of the defense, the State then introduced Chatman's prior inconsistent statement before the grand jury that defendant said, "Fuck it. So what? I did him."

Chatman's girlfriend, Ckiquita Thomas, then testified. Thomas, who was selling drugs on the night of the shooting, stated that Henderson warned her about two men who were talking about robbing her. On direct examination, Thomas said she saw Henderson and defendant talking near the bathroom. Thomas testified that she overheard them say "We got to get them before they get us." The State asked Thomas who was speaking, to which she replied, "I wasn't—It sounded like Galen [Henderson], but I wasn't looking in that direction." Over defense counsel's objection, the State asked Thomas the same question to clarify her answer. After Thomas gave the same answer as before, the State then impeached her by introducing her prior grand jury testimony. Before the grand jury, Thomas had stated, "And I overheard either [Henderson] or [defendant]—I can't recognize the voice—and they said 'We want to get them first.' " Thomas then testified that she later went to sleep and awoke to gunshots. After Thomas heard the gunshots, "I heard my front door close. And when my front door closed, I seen Eric, [defendant] and Galen [Henderson] walking out my back door."

Eric Mason testified that Henderson and defendant went out the rear door of room 282 and then he "heard some pops or something." A few minutes later, defendant and Henderson knocked on the door of room 282. Mason let them in and asked them if they heard anything. They said no, and defendant asked Mason to take him home. Mason then left the motel with defendant and Henderson.

The final occurrence witness, Ronald Williams, Finest Simmons's brother, testified that he was in the room with Finest when he was shot. Williams stated that he was in the bathroom when he heard a knock at the door. He then heard some people say "give me the money," then heard a hit and a single gunshot.

After all the evidence, the jury acquitted defendant of first degree murder but convicted him of armed robbery. The court sentenced defendant to 14 years in prison. For the reasons that follow, we find that any trial errors were harmless and we affirm the armed robbery conviction of Johnnie Daniels.

■ Defendant first argues that his presence was required at the hearing on the State's motion to advance and reset the cause from October 26, 1994, to October 21, 1994. We disagree. Our supreme court has made clear that any continuance requested or agreed to by defendant's counsel is properly attributable to the defendant. *People v. Bowman*, 138 Ill. 2d 131, 141-43, 561 N.E.2d 633, 638-39 (1990).

This is so whether or not there is evidence in the record that counsel consulted with the defendant regarding such a continuance. *Bowman*, 138 Ill. 2d at 142, 561 N.E.2d at 639, citing *People v. Woods*, 27 Ill. 2d 393, 395-96, 189 N.E.2d 293, 294 (1963). If anything, a motion to advance the trial schedule only benefits the defendant. Therefore, defendant cannot claim error on this issue.

■ Defendant next argues that the trial court erred in failing to hold a hearing on his motion to suppress Galen Henderson's trial testimony. Defendant claims that Henderson was arrested pursuant to an illegal search of defendant's home and that he (defendant) had standing to challenge the warrantless search. The trial court denied defendant's motion, finding, as a matter of law, that defendant did not have standing to object to Henderson's trial testimony.

The trial court erred in holding that defendant did not have standing to object. However, when a motion to suppress presents a question of law, our review of the trial court's determination is *de novo. People v. Foskey*, 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197 (1990). See *United States v. Raddatz*, 447 U.S. 667, 65 L. Ed. 2d 424, 100 S. Ct. 2406 (1980). Thus, even assuming defendant had standing to object to Henderson's trial testimony, was Henderson's in-court testimony not suppressible as a matter of law? Because we find that Henderson's testimony was not suppressible, we hold that the trial court's erroneous ruling on standing was harmless.

First, defendant had standing to request exclusion of Henderson's testimony. Assuming defendant's legitimate expectation of privacy in the home, defendant alleged a violation of his own fourth amendment rights, not Henderson's. *People v. Johnson*, 114 Ill. 2d 170, 191, 499 N.E.2d 1355, 1364 (1986), citing *Rakas v. Illinois*, 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430 (1978). Thus, defendant had standing to request exclusion of the in-court testimony of Galen Henderson, which was procured by the allegedly illegal search of defendant's home. See *People v. Basile*, 21 Ill. App. 3d 273, 277, 315 N.E.2d 293, 297 (1974).

■ Resolution of the standing issue, however, does not answer whether the testimony should be suppressed. "Both the direct and indirect products of unconstitutional police conduct must be suppressed under the 'fruit of the poisonous tree' doctrine." *People v. Kluppelberg*, 257 Ill. App. 3d 516, 529, 628 N.E.2d 908, 918 (1993), citing *Wong Sun v. United States*, 371 U.S. 471, 484, 9 L. Ed. 2d 441, 453, 83 S. Ct. 407, 416 (1963). As in all exclusionary issues, the question is whether "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.'" *Wong Sun*, 371 U.S. at 487, 9 L.

Ed. 2d at 455, 83 S. Ct. at 417, quoting *Nardone v. United States*, 308 U.S. 338, 341, 84 L. Ed. 307, 312, 60 S. Ct. 266, 268 (1939). The touchstone in these cases is "discovery" of the evidence.

Courts have excluded witness testimony when the identity of the witness would not have been discovered *but for* the illegal search. In *People v. Albea*, 2 Ill. 2d 317, 323, 118 N.E.2d 277, 280 (1954), the Illinois Supreme Court excluded such witness testimony when the identity of the witness was discovered concurrently with the illegal search. Likewise, in *People v. Gonzalez*, 268 Ill. App. 3d 224, 230, 643 N.E.2d 1295, 1299 (1994), the court suppressed a witness's testimony when his identity was obtained as a result of defendant's illegally obtained confession. See *United States v. Ceccolini*, 435 U.S. 268, 279, 55 L. Ed. 2d 268, 279, 98 S. Ct. 1054, 1062 (1978) (establishing attenuation factors for determining exclusion of live witness testimony).

■ As a threshold matter, we find that Henderson was not a witness discovered *but for* the illegal search. His testimony is not fruit of the poisonous tree requiring exclusion. The exclusionary rule need not apply if knowledge of the facts that were illegally obtained is gained from an independent source or independent investigation. *Nix v. Williams*, 467 U.S. 431, 443, 81 L. Ed. 2d 377, 387, 104 S. Ct 2501, 2508 (1984); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 64 L. Ed. 319, 321, 40 S. Ct. 182, 183 (1920). Illinois law is in accord. See *Albea*, 2 Ill. 2d at 321, 118 N.E.2d at 279; *People v. Lynumn*, 21 Ill. 2d 63, 67-68, 171 N.E.2d 17, 20 (1960), *rev'd on other grounds*, 372 U.S. 528, 9 L. Ed. 2d 922, 83 S. Ct. 917 (1963). Knowledge from independent investigation is often shown when the police were aware of the witness's identity prior to any illegal police conduct. *Kluppelberg*, 257 Ill. App. 3d at 529, 628 N.E.2d at 918. Thus, exclusion is unnecessary when the illegal conduct did not result in "discovery" of the witness but merely his "location." *Basile*, 21 Ill. App. 3d at 277-78, 315 N.E.2d at 297.

In this case, Henderson testified before the grand jury in April 1993, shortly after the murder. The search of defendant's home and the arrest of Henderson occurred on February 6, 1995, almost two years after the murder. Henderson and his knowledge of the crime were known by the police well before the allegedly improper search. Henderson was not a witness "discovered" incident to the illegal search. Accordingly, Henderson's testimony was properly admitted.

■ Defendant next claims that the trial court improperly restricted admission of evidence, limited cross-examination, and confined argument of Henderson's drug addiction and weapon convictions. We review the trial court's evidentiary decisions under an abuse of discretion standard. *People v. Hope*, 168 Ill. 2d 1, 23, 658

N.E.2d 391, 401 (1995) (admission of evidence); *People v. Lewis*, 165 Ill. 2d 305, 341, 651 N.E.2d 72, 89 (1995) (scope of cross-examination). Defendant first argues that the trial court erroneously restricted admission of Henderson's prior weapon convictions for impeachment purposes. We disagree. Henderson's prior weapon convictions were the subject of a stipulation. This evidence was before the jury. Defendant has no basis for claiming error.

■ Defendant next complains that the trial court erroneously restricted admission of testimony concerning Henderson's drug addiction. Again we disagree. A witness can be cross-examined as to his drug addiction for impeachment purposes. *People v. West*, 156 Ill. App. 3d 608, 612, 509 N.E.2d 153, 155 (1987). In this case, defendant had ample opportunity to cross-examine Henderson regarding his prolonged heroin addiction and cocaine use.

■ Third, defendant claims that the trial court erroneously limited his ability to argue Henderson's drug addiction and weapon convictions as substantive evidence. Defendant attempted to argue this evidence, not as impeachment, but as substantive evidence to prove Henderson was the shooter based on a drug motive. The court did not abuse its discretion by limiting cross-examination and closing argument when defendant's evidence was speculative.

The decision to admit a witness's prior convictions rests within the sound discretion of the trial court. *People v. Chapman*, 262 Ill. App. 3d 439, 461, 633 N.E.2d 718, 732 (1992). An accused may attempt to show someone else committed the crime, but this right is not limitless. *People v. Ward*, 101 Ill. 2d 443, 455, 463 N.E.2d 696, 701-02 (1984). The evidence must tend to prove the particular offense charged and be relevant and probative. *Ward*, 101 Ill. 2d at 455-56, 463 N.E.2d at 702.

For example, in *People v. Wilson*, 254 Ill. App. 3d 1020, 1044-47, 626 N.E.2d 1282, 1301 (1993), the court upheld the trial court's exclusion of a witness's prior convictions for armed robbery and attempted murder. In so holding, the court observed that the defendant had not shown "striking similarities" between defendant's alleged murder of police officers during a routine traffic stop and the witness's shooting of a police officer during an armed robbery of an ice cream parlor. *Wilson*, 254 Ill. App. 3d at 1047, 626 N.E.2d at 1301. Likewise, in *People v. Chapman*, the defendant tried to introduce a weapon conviction against the State's primary witness to prove that the witness, not the defendant, was the shooter. *Chapman*, 262 Ill. App. 3d at 459-60, 633 N.E.2d at 732. The trial court found, and the appellate court agreed, that the witness's weapon conviction did not tend to prove a propensity to commit violence, let alone the murder in question. *Chapman*, 262 Ill. App. 3d at 460-61, 633 N.E.2d at 732.

Here, the trial court did not err in limiting defendant's attempt to argue the substance of Henderson's prior drug and weapon convictions. The evidence was too speculative. Both Henderson and defendant were drug addicts and both had weapon convictions. None of the evidence offered by the defense concerning Henderson's drug use or weapon convictions proved Henderson committed the particular crime charged. The trial court did not err in limiting defendant's argument of this evidence.

■ Defendant also contends that the court erroneously allowed the State to introduce Henderson's prior consistent statement before the grand jury to bolster his trial testimony. Defendant has waived this issue by not including it in his motion for a new trial. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). Defendant urges us to review this issue under the plain error doctrine. To find plain error, the alleged error must undermine the fairness of the trial. *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901, 910 (1995). Either the error must affect substantial rights or the evidence must be closely balanced. *Keene*, 169 Ill. 2d at 18, 660 N.E.2d at 910. Admission of prior consistent statements, even if improper, does not implicate a substantial right. *Keene*, 169 Ill. 2d at 18, 660 N.E.2d at 910. Nor was the evidence closely balanced in this case. We decline to address this issue.

■ Last, defendant argues that the trial court's instructions to the jury denied defendant a fair trial. "An error in a jury instruction is harmless if it is demonstrated that the result of the trial would not have been different if the proper instruction had been given." *People v. Johnson*, 146 Ill. 2d 109, 137, 585 N.E.2d 78, 90 (1991). In this case, the trial court did not err in the instructions it tendered to the jury.

The decision to give a particular jury instruction rests within the discretion of the trial court. *People v. Lewis*, 165 Ill. 2d 305, 355, 651 N.E.2d 72, 95 (1995). We find that the trial court did not err in declining to give an accomplice instruction regarding Henderson's testimony. The requested jury instruction, Illinois Pattern Jury Instructions, Criminal, No. 3.17 (3d ed. 1992) (hereinafter IPI Criminal 3d) states:

"When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

The accomplice witness instruction should be given when "there is probable cause to believe [the witness] was guilty as a principal or as an accessory on the theory of accountability." *People v. Henderson*,

142 Ill. 2d 258, 314, 568 N.E.2d 1234, 1261 (1990). There is nothing to indicate that Henderson would be guilty under an accountability theory. Although Henderson was present when Simmons was shot, mere presence at the scene of the crime does not hold one accountable for the offense. *People v. Taylor*, 164 Ill. 2d 131, 141, 646 N.E.2d 567, 571 (1995). Moreover, Thomas's equivocal testimony about the conversation between Henderson and defendant did not establish a common criminal plan or purpose. *Taylor*, 164 Ill. 2d at 141, 646 N.E.2d at 571. The trial court did not abuse its discretion in determining that an accomplice witness instruction was unnecessary. There was no evidence to suggest that Henderson participated in or was accountable for defendant's commission of the crime.

Even if the trial court erred in not providing an accomplice instruction, any error was harmless because evidence questioning Henderson's credibility was elicited elsewhere. *People v. Hoard*, 249 Ill. App. 3d 21, 32, 618 N.E.2d 808, 817 (1993). By his own testimony, Henderson admitted prior convictions for cocaine possession and robbery. He also admitted to his cocaine use and heroin addiction. Henderson's prior weapon convictions were admitted through stipulation. Henderson testified about living in the witness quarters and about whether any promises were made by the State regarding other convictions. Henderson also testified that he told his wife and her aunt that he implicated defendant because the police tricked him. This statement was confirmed by both women. And finally, another witness testified as to Henderson's poor reputation for honesty. Given the volume of evidence attacking Henderson's credibility, any error was harmless.

The trial court also did not err by giving a circumstantial evidence jury instruction. IPI Criminal 3d No. 3.02 (3d ed. 1992). Defendant waived this issue by not preserving it in his motion for new trial. *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130. The trial court's decision to give a circumstantial evidence instruction was discretionary and, thus, not plain error. *Lewis*, 165 Ill. 2d at 355, 651 N.E.2d at 95.

Likewise, the trial court properly determined that no specific jury instruction as to a drug addict's testimony was needed because the general instruction regarding jurors weighing witness credibility was sufficient. IPI Criminal 3d No. 1.02 (3d ed. 1992). Courts are reluctant to give a non-IPI drug-addiction jury instruction as it places undue emphasis on particular evidence in a case. *People v. West*, 156 Ill. App. 3d 608, 612, 509 N.E.2d 153, 155 (1987). Here, defendant was allowed to argue extensively to the jury that Henderson's addiction undermined his credibility. Again, the record demonstrates that Henderson's credibility was sufficiently impugned at trial.

For the foregoing reasons, we affirm the conviction of Johnnie Daniels for the armed robbery of Finest Simmons.

Affirmed.

HOFFMAN and O'BRIEN, JJ., concur.