THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN FOSTER, Defendant-Appellant.

First District (5th Division)   No. 1—98—0539

Opinion filed November 9, 2000.—Rehearing denied July 24, 2001.

Rita A. Fry, Public Defender, of Chicago (Henry L. Hams, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Linda D. Woloshin, and LaTisha Foster, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Defendant John Foster was convicted of first degree murder and three counts of armed robbery after a jury trial. The trial court sentenced defendant to natural life imprisonment for murder, with concurrent 60-year sentences for the three armed robbery counts to run consecutively to the life sentence. Defendant was also sentenced to an additional 30-year sentence for a previous armed robbery conviction, which was to run consecutively to the other sentences.

Defendant appeals, arguing: (1) that the trial court erred in restricting the cross-examination of a State witness; (2) that the trial court erred in imposing an extended term for armed robbery and in imposing excessive aggregate consecutive sentences and that the defendant's harsh sentence was imposed under the trial court's mistaken beliefs as to the terms of sentencing provided by law; (3) that the trial judge erred in denying defendant's request for a jury instruction regarding the credibility of a drug addict; and (4) that by making improper and prejudicial comments regarding the defendant's failure to testify and improperly shifting the burden, the State violated the defendant's sixth and fourteenth amendment rights to a fair trial (U.S. Const., amends. VI, XIV). For the following reasons, we affirm.

On December 31, 1995, Sherman Yearby, Michelle Watts and their four children were in their bedroom. They also shared the house with Michelle's parents Jacqueline and Richard, sister Belinda, brother Richard Jr. and Belinda's four children. At 1 a.m., Jacqueline answered a knock at the door. The man at the door, later identified as defendant, was accompanied by a woman. They asked for Belinda and, before Jacqueline could call her, defendant and his companion entered the house. Armed with a gun, defendant forced Jacqueline and Yearby's nephew, Bobby, directly to Belinda's bedroom. While there, he announced that "[t]his is a stick-up" and demanded money and property. Jacqueline gave the defendant $6; Belinda gave him drugs and $25. Defendant also took $200 from Bobby.

Next, defendant went upstairs and banged on Michelle and Yearby's bedroom door. Yearby opened the door a foot, then leaned into it with his shoulder as if he was trying to close it. Defendant shot Yearby through the door. Defendant then pushed his way into the room and told Michelle to be quiet or he would shoot her also. He then rifled through Yearby's pockets as he lay unconscious on the floor, taking $200. Defendant left the room and returned downstairs to rejoin his female companion, who had remained with Belinda and Jacqueline. When the telephone rang moments later, defendant ripped the phone out of the wall before he and his companion left the house. Yearby died soon after the shooting from the gunshot wound.

Michelle, Belinda and Jacqueline later positively identified the defendant, both from photographs and in a lineup, as the man who robbed them at gunpoint and shot Yearby. All three testified at trial to the events and made in-court identifications of the defendant. After a trial, the jury found defendant guilty of the first degree murder of Yearby and three counts of armed robbery for the robberies of Yearby and Belinda and Jacqueline Watts.

On appeal, defendant first argues that the trial court erred in

restricting the cross-examination of the State's witness, Belinda Watts. Prior to trial, the State filed a motion *in limine* to exclude any inquiry of Belinda regarding a robbery investigation which took place in January 1997. The State argued that Belinda was named as an offender, but the alleged victim, Sheila Burrell, did not file a complaint against her. Defendant stated that Burrell contacted the police to check on the status of the 1997 armed robbery case, but the police seemed only to be interested in this homicide case and did not want to ruin their witness by proceeding with the other armed robbery. Defendant urged the court to allow him to question Burrell to determine if she decided not to pursue the charges or if there had been some type of arrangement made by the State. Defendant argued that Belinda's testimony implicating the defendant might have been induced by favorable treatment by the State or influenced by bias or motive regarding the uncharged robbery. The State argued there was no consideration given in the robbery investigation. The police had tried to contact Burrell but were unable to do so. She never filed a complaint and, therefore, there was no bias or motive to cross-examine Belinda regarding the matter. The court reserved its ruling.

Defendant then brought his own motion *in limine* informing the court that, when Burrell contacted the police identifying Belinda Watts as an offender in the 1997 armed robbery, she also provided them with information implicating defendant as the perpetrator of the present armed robbery and murder. He asked that Burrell's testimony concerning defendant's nickname and Illinois Department of Corrections (IDOC) records be precluded. The court denied the motion because the State said that it would not mention the IDOC records at trial.

The State later renewed its motion *in limine* before Belinda Watts' testimony to preclude her from being questioned about the alleged robbery in 1997. The State again stated that, since Belinda was never arrested and no charges were ever brought, the robbery was irrelevant. Defendant cited the police report which stated that the investigating officer contacted Belinda, who denied the robbery but was available for surrender. The report also stated that the officer was unable to contact the alleged victim. Defendant stated that he did not know if Burrell wanted to proceed with the charges, but he argued that Belinda might be motivated to falsely identify the defendant because she could still be charged with the crime. The court allowed the State's motion.

Defendant now argues that this limitation restricted his sixth amendment right to confront witnesses and was extremely prejudicial. The State counters, stating that, although Belinda was named as an offender, Burrell did not proceed with the allegations and this infor-

mation is therefore collateral. We reject defendant's argument and affirm the trial court's limit on cross-examination.

●1 A criminal defendant has a constitutional right to confront witnesses against him, which includes the right to conduct a reasonable cross-examination. *People v. Davis*, 185 Ill. 2d 317, 337, 706 N.E.2d 473, 482 (1998). A defendant can impeach a witness with evidence that the witness has been arrested or charged with a crime where it would reasonably tend to show that the witness's testimony might be influenced by bias, interest or motive to testify falsely. *Davis*, 185 Ill. 2d at 337, 706 N.E.2d at 482. The defendant has the right to cross-examine a witness regarding pending criminal charges without first establishing that the witness was promised something in return for his testimony. Additionally, where the facts reasonably suggest that the witness might be motivated by a promise of leniency, defendant should be permitted to explore that possibility on cross-examination. *People v. Nutall*, 312 Ill. App. 3d 620, 627, 728 N.E.2d 597, 604-05 (2000). However, the evidence offered must give rise to the inference that the witness has something to gain or lose by his or her testimony. "Therefore, the evidence used must not be remote or uncertain." *People v. Bull*, 185 Ill. 2d 179, 206, 705 N.E.2d 824, 838 (1998).

■ The right of cross-examination is not within the discretion of the trial court, but the scope of cross-examination does rest within the court's discretion. *Nutall*, 312 Ill. App. 3d at 627, 728 N.E.2d at 605. The trial court's rulings will not be overturned absent a clear abuse of that discretion resulting in manifest prejudice. *Nutall*, 312 Ill. App. 3d at 627-28, 728 N.E.2d at 605.

■ In this case, the defendant sought to cross-examine Belinda regarding a robbery about which she was merely questioned. No charges were ever filed against her and she was never arrested. There were no pending criminal charges that would bias or influence her testimony. There was also no evidence presented by defendant in the offer of proof that Belinda had been promised any leniency by the State in exchange for her testimony at defendant's trial. Further, there was no evidence offered to support an inference that the witness had something to gain or lose by her testimony. We reject defendant's contention that, because the statute of limitations had not yet expired, Belinda had a motive to lie at trial. The State submitted that the alleged victim had never filed a complaint about the incident, there was no evidence that she wanted to file charges, and the police could not locate her. Thus, the State had no leverage over Belinda.

We find then that any evidence of bias was remote and uncertain and, therefore, could not be used to cross-examine Belinda. We hold there was no abuse of discretion by the trial court in limiting the scope of cross-examination and no resulting prejudice to defendant.

Defendant next argues that the trial court erred in imposing an extended term for armed robbery and in imposing excessive aggregate consecutive sentences. He also contends that the defendant's harsh sentence was imposed under the trial court's mistaken beliefs as to the terms of sentencing. Additionally, defendant generally argues, without citation, that a natural life sentence is excessive because it is "an extremely harsh penalty." We reject this proposition and affirm the trial court's determination.

■ "A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). When a trial court sentences a defendant to a term of imprisonment within the statutory range, we will not disturb that sentence absent an abuse of discretion. *People v. Goyer*, 265 Ill. App. 3d 160, 169, 638 N.E.2d 390, 396 (1994).

■ Here, the trial court chose a valid sentence authorized by law for the offense of first degree murder. This sentence was within the statutory range and justified by the aggravating and mitigating factors presented during sentencing. The trial judge could reasonably have found that a natural life sentence was applicable to defendant, and we therefore hold that there was no abuse of discretion in this case. We also reject defendant's argument that the judge had a mistaken belief regarding extended terms and consecutive sentences.

Defendant argues that the trial court erred in imposing an extended term for armed robbery. Defendant cites *People v. Henderson*, 142 Ill. 2d 258, 568 N.E.2d 1234 (1990), in support of his argument. However, the analysis in that case has been rejected and implicitly overruled by *People v. Terry*, 183 Ill. 2d 298, 700 N.E.2d 992 (1998). We similarly reject defendant's argument.

■ Section 5—8—2 of the Unified Code of Corrections provides that an extended term could be imposed "for the class of the most serious offense" if one of the aggravating factors under section 5—5—3.2 was also present. 730 ILCS 5/5—8—2(a) (West 1994). Section 5—5—3.2(b)(1) allowed for an extended sentence if the defendant had a previous conviction of the same, similar class, or greater class felony within the 10 years preceding the present convictions and such charges are separately brought and arise out of different series of acts. 730 ILCS 5/5—5—3.2(b)(1) (West 1994).

■ In this case, defendant had two previous convictions for armed robbery, the same class of felony for which he is now convicted, in 1993. These convictions were separately brought and arose out of sep-

arate acts only five years before his present convictions. Defendant therefore qualifies for an extended term for armed robbery.

However, defendant argues that under section 5—8—2 only the most serious offense can be extended. In this case, the most serious offense would be first degree murder and therefore his armed robbery convictions could not be extended. The Illinois Supreme Court addressed this issue in *Terry*, 183 Ill. 2d 298, 700 N.E.2d 992. In *Terry*, the court reaffirmed *People v. Young*, 124 Ill. 2d 147, 529 N.E.2d 497 (1988), and *People v. Neal*, 111 Ill. 2d 180, 489 N.E.2d 845 (1985), while declining to follow *Henderson*. The *Terry* court held that a sentence for a term of years for murder was subject to the extended-term provisions in section 5—8—2. However, a sentence of death or natural life for murder was not subject to the application of section 5—8—2. *Terry*, 183 Ill. 2d at 305, 700 N.E.2d at 995. Since a sentence of death or natural life cannot be extended, the extended-term statute applied to the next most serious offense of which the defendant was convicted. *Terry*, 183 Ill. 2d at 305, 700 N.E.2d at 996.

In this case, defendant was not sentenced to a term of years for his murder conviction; he was sentenced to natural life imprisonment. Therefore, his life sentence cannot be extended and we must look to the next most serious crime of which he was convicted, which is the Class X felony of armed robbery. His armed robbery convictions can be extended and, under section 5—8—2(a)(2), the proper extended-term range for a Class X felony is between 30 and 60 years. 730 ILCS 5/5—8—2(a)(2) (West 1994). The trial court's sentence of 60 years for each of the armed robberies was within the range provided by statute and justified by the evidence. We defer to the trial court and hold there was no abuse of discretion here. The 60-year sentence for the armed robbery convictions is affirmed.

Defendant next claims that the trial court erred in imposing excessive aggregate consecutive sentences. He argues that his sentences exceed the maximum terms for murder and armed robbery and, therefore, the 30-year term for the unrelated armed robbery should be made to run concurrently with the other sentences. We reject his argument.

■ Section 5—8—4(c)(2) provides that "the aggregate of consecutive sentences shall not exceed the sum of the maximum terms authorized under Section 5—8—2 for the 2 most serious felonies involved." 730 ILCS 5/5—8—4(c)(2) (West 1994).[1] Under section 5—8—2, the maximum penalty for armed robbery is 60 years and is 100 years for first degree murder. 730 ILCS 5/5—8—2(a)(1), (a)(2) (West 1994).

---

[1]The statute was amended in July 1997 to state: "the aggregate of consecutive sentences for offenses that were committed as part of a single course of

■ We are persuaded by the analysis in *Terry* and hold that it applies to section 5—8—4(c)(2). A natural life sentence is not a term of years and is therefore not subject to the application of section 5—8—2, the extended-term statute. Therefore, in interpreting the consecutive sentencing statute, section 5—8—4(c)(2), we will not consider first degree murder with a sentence of natural life as one of the most serious felonies involved. We will only consider felonies with actual sentences of a term of years. This analysis is further supported by *People v. Saunders*, 235 Ill. App. 3d 661, 675, 601 N.E.2d 1038, 1047 (1992), which excluded the defendant's life sentence for murder in adding up the maximum terms for the two most serious felonies involved under section 5—8—4(c)(2).

In this case, we do not consider first degree murder as one of the most serious felonies involved because that conviction resulted in a natural life sentence and not a term of years. We therefore look to the next two most serious felonies involving a term of years, both of which are armed robberies. Armed robbery is a Class X offense and the maximum term under section 5—8—2 is 60 years. 730 ILCS 5/5—8—2(a)(2) (West 1994). The aggregate of consecutive sentences allowed under section 5—8—4(c)(2) is 120 years. 730 ILCS 5/5—8—4(c)(2) (West 1994). Since defendant was sentenced to 90 years consecutively, his sentences do not exceed the maximum allowed by statute. We therefore affirm the consecutive nature of all of his convictions.

Defendant's third claim alleges that the trial court erred in denying the defendant's addict jury instruction. The defense sought to admit three jury instructions concerning the drug use of State's witness Belinda Watts. The first two are not found in the Illinois Pattern Jury Instructions, Criminal. The first read:

> "You have before you evidence that a witness was, or is, a user of narcotics. It is for you to determine whether the witness is, or was, addicted to narcotic drugs.
>
> If you find from your consideration of the evidence that the witness was, or is, addicted to narcotics you must subject his testimony to close scrutiny and act upon it with great caution, for the law recognizes that narcotic addicts. beome [*sic*] habitual liars."

The second stated: "The testimony of an addict is to be scrutinized with great caution and if you find that a witness was an addict or used

---

conduct during which there was no substantial change in the nature of the criminal objective shall not exceed the sum of the maximum terms authorized under Section 5—8—2 for the 2 most serious felonies involved, but no such limitation shall apply for offenses that were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5—8—4(c)(2) (West 1998).

narcotics at about the time of the alleged offense, such a finding would be an important factor going to the reliability of the addict." The third instruction was a modification of Illinois Pattern Jury Instructions, Criminal, No. 1.02 (3d ed. 1992) (hereafter IPI Criminal 3d) regarding the believability of witnesses, adding in the phrase "you may take into account his addiction to drugs."

The trial judge refused the first two, stating that they were non-IPI instructions and, if the supreme court had intended these instructions be given, it would have included them in the Illinois Pattern Jury Instructions, Criminal. The court refused the modified IPI instruction and instead submitted IPI Criminal 3d No. 1.02, the general IPI instruction regarding the jury as the sole judge of believability of the witnesses. The judge further noted that the defendant could comment on the witness's drug usage during closing arguments.

■ Parties must be allowed to cross-examine witnesses regarding drug use, but a trial court is not required to instruct the jury on the unreliability of testimony by drug addicts. *People v. Armstrong*, 183 Ill. 2d 130, 146, 700 N.E.2d 960, 967 (1998). It is the function of the jury, not the trial court, to determine the credibility of witnesses. *Armstrong*, 183 Ill. 2d at 146, 700 N.E.2d at 967. The supreme court has held that it is not reversible error to deny an offered addict instruction where evidence of the addiction is before the jury so it can make its own determination of the credibility of the witness. *People v. Steidl*, 142 Ill. 2d 204, 238, 568 N.E.2d 837, 851 (1991). Further, courts are reluctant to give a non-IPI drug addiction jury instruction because it places undue emphasis on particular evidence in a case. *People v. Daniels*, 287 Ill. App. 3d 477, 486, 677 N.E.2d 1385, 1392 (1997). In *Daniels*, this court found that no specific jury instruction regarding addiction was needed as the general instruction regarding jurors weighing witness credibility was sufficient. Illinois Pattern Jury Instructions, Criminal, No. 1.02 (3d ed. 1992); *Daniels*, 287 Ill. App. 3d at 486, 677 N.E.2d at 1392.

■ In this case, Belinda Watts testified to her habitual drug usage during the trial and was subject to cross-examination regarding her addiction. She testified that she stored drugs in her bedroom and sold these drugs outside her house. She stated that she had inhaled heroin just 30 minutes before the armed robbery occurred on December 31, 1995, and that she had also inhaled heroin earlier that day. Belinda had been using drugs on a daily basis for 13 years prior to the armed robbery and completed a three-month drug treatment program in 1997. She stated that she was clean and sober at the time of trial. Defense counsel also commented during closing arguments on Belinda's drug use.

Thus, there was ample discussion before the jury of Belinda's drug addiction. The jury had substantial evidence of Belinda's addiction in order to make their own determination of her credibility. Moreover, the trial court instructed the jury on the believability of witnesses through the general IPI instruction, IPI Criminal 3d No. 1.02. We find that omitting the non-IPI instructions and the modified IPI Criminal 3d No. 1.02 instruction submitted by the defendant was not an abuse of discretion by the trial judge.

Defendant cites the committee notes to IPI Criminal 3d No. 1.02 and *People v. Franz* in support of his offered jury instructions. Illinois Pattern Jury Instructions, Criminal, No. 1.02, Committee Note (3d ed. 1992); *People v. Franz*, 54 Ill. App. 3d 550, 368 N.E.2d 1091 (1977). These sources suggest that a judge could add additional elements of believability to the general jury instruction if the facts of the particular case called for such changes. However, the judge is not required to modify the jury instructions: it is in his discretion to do so. The majority of cases hold that these instructions were not required and were properly refused by the trial court. We hold, based on all of the above-mentioned evidence adduced at trial concerning Belinda's drug use and the use of IPI Criminal 3d No. 1.02 on witness believability, that the trial court did not abuse its discretion in refusing to admit defendant's specific addict instructions. We also find that the exclusion of the instructions did not substantially prejudice defendant's case. Even without Belinda's testimony, the remainder of the evidence overwhelmingly proved defendant's guilt beyond a reasonable doubt.

Lastly, defendant argues that by making improper and prejudicial comments the State violated the defendant's sixth and fourteenth amendment rights to a fair trial. Prosecutors are given wide latitude in making closing arguments. *People v. Emerson*, 189 Ill. 2d 436, 488, 727 N.E.2d 302, 331 (2000). Prosecutors may denounce the accused and reflect upon the credibility of witnesses if such comments are based on the facts in the record and the inferences which can fairly be drawn from that evidence. *People v. Williams*, 313 Ill. App. 3d 849, 863, 730 N.E.2d 561, 573 (2000). A reviewing court will not reverse a jury verdict based on improper remarks made during closing arguments unless they resulted in substantial prejudice to the defendant and constituted a material factor in his convictions, without which the jury might have reached a different verdict. *Emerson*, 189 Ill. 2d at 488, 727 N.E.2d at 331; *People v. Falconer*, 282 Ill. App. 3d 785, 789, 668 N.E.2d 1095, 1098 (1996). The trial court is in the best position to determine whether improper comments result in prejudice to a defendant, and the trial court's decision will not be reversed absent an abuse of discretion. *Emerson*, 189 Ill. 2d at 488, 727 N.E.2d at 331.

Defendant first argues that the following comment, made by the State during its rebuttal argument, constituted prejudice: "Did you hear any evidence or testimony from that witness stand that it was anyone else other than the Defendant? No." Defendant made a timely objection to this comment, which was sustained. Defendant argues that this comment improperly commented on defendant's failure to testify and shifted the burden of proof to defendant. Defendant also argues that the prosecutor made another improper comment when he stated that the defendant "went immediately to the back room because he knew that's where the drugs and guns were stored." Defendant made an objection to this comment, which was sustained. Defendant argues that the defendant's knowledge of where guns and drugs were stored was not supported by the evidence.

The trial court can normally correct any error resulting from an improper remark by sustaining the objection or instructing the jury to disregard the remark. *Williams*, 313 Ill. App. 3d at 863, 730 N.E.2d at 573. Further, a defendant is not denied a fair trial where the jury has heard abundant evidence supporting the verdict and is admonished that closing statements are not evidence. *Falconer*, 282 Ill. App. 3d at 789, 668 N.E.2d at 1098.

Here, the judge sustained both of defendant's objections to the comments. Further, he admonished the jury before closing arguments that these arguments were not evidence. Instructions given to the jury apprised them that the burden of proof is on the State to prove defendant's guilt beyond a reasonable doubt, the defendant does not have to testify and the defendant is presumed innocent. Also, the overwhelming weight of the evidence supported defendant's conviction. Moreover, we hold that neither of these comments resulted in prejudice to the defendant such that, without the comments, the jury might have reached a different verdict.

Defendant also argues that the cumulative effect of prosecutorial attacks in closing argument deprived defendant of his right to a fair trial and requires a reversal. "The resolution of the general argument that the cumulative effect of the comments warrants a reversal will depend upon the court's evaluation of the individual errors. Where the alleged errors do not amount to reversible error on any individual issue, there generally is no cumulative error." *Falconer*, 282 Ill. App. 3d at 793, 668 N.E.2d at 1101. Because we find that the prosecutor's comments did not constitute error, we reject this argument.

We further disagree with defendant's assertion that the prosecutor's remarks were intended to inflame the passion or arouse the prejudice of the jury. There is no evidence of such an intention. We find that the prosecutor's comments during closing arguments did not

result in substantial prejudice to the defendant nor were they material factors in his convictions. We find no abuse of discretion and therefore affirm the trial court.

For the reasons set forth above, we hereby affirm defendant's convictions for first degree murder and armed robbery and affirm his sentences.

Affirmed.

GREIMAN and ZWICK, JJ., concur.